William G. Robey *vs.* Walter W. Hannon and Henry W. Hannon.—*December,* 1845.

The will of *W. H.* executed on the 16th May, 1838, was admitted to probate on the 18th September of the same year. The appellees, the executors of this will, afterwards, on the 20th November following, offered for probate a deed, duly executed and recorded, dated the 8th September, 1832, by which their testator conveyed to the appellees, his two sons, " one-half of all the personal estate of which he might die possessed." In June, 1839, after process of citation to all parties interested, the Orphans court admitted this deed to record, as a testamentary paper. On the 20th May, 1845, the appellant and his then wife, one of the heirs and devisees of the testator, filed in said Orphans court a petition, praying for certain reasons therein stated, that the probate of said deed might be revoked and vacated. Upon appeal from the order of said court dismissing this petition, it was *Held*, that this deed was not a testamentary paper, and the order of the Orphans court directing it to be recorded as such, was null and void.

APPEALS from the *Orphans Court* of *Charles* County.

On the 18th September, 1838, the appellees, as executors of the last will and testament of *Walter W. Hannon*, offered to the Orphans court of *Charles* County for probate, the will of their testator, dated the 16th May, 1838, whereby, after payment of debts and funeral charges, &c., the testator devises as follows: "*Item*—I give and bequeath to my daughter, *Grace Ann Robey*, wife of *William Gerard Robey*, my dwelling plantation, whereon I now live, called '*Moore's Rest*,' containing two hundred acres more or less—also all that part or parcel of land called '*Conjunction*,' lying," &c., "but in case my said daughter, *Grace Ann*, should die, without lawful heirs begotten of her body, then it is my will and desire that the said lands shall be the estate and property of my two sons, *Walter W. Hannon*, and *Henry M. Hannon*, equally to them and their heirs forever." "*Item*—I also give and bequeath to my said daughter, *Grace Ann Robey*, one-third part of my personal property I die possessed of, and not otherwise willed or disposed of." "And lastly, I do hereby constitute and appoint my two sons, *Walter W.*, and *Henry M. Hannon* my executors of this my last will and testament, revoking and annulling all former wills by me heretofore made, ratifying and confirming this and none other to be my last will and testament." This will was duly admitted to probate, and letters testamentary granted to the executors, who, afterwards, on the 20th November, 1838, filed their petition in said Orphans court, stating the probate of said will, and further alleging that their father, on the 17th September, 1832, executed a deed of gift to your petitioners of one-half of his personal estate that he might die possessed of, as will appear by said deed filed with the petition, and praying that the same may be admitted to probate as a testamentary paper of said *Walter W. Hannon, Senior*, and order the same to be recorded as such, and that citation may be issued to *William G. Robey*, and *Grace Ann*, his wife, *Julia Hannon*, *Frances O. Hannon*, and the other

heirs of *Walter Hannon* deceased, to show cause why the prayer of this petition should not be granted.

The deed exhibited with this petition is as follows:

" This Indenture, made this 8th day of September, in the year of our Lord one thousand eight hundred and thirty-two, between *Walter W. Hannon, Sen.*, of *Charles* County, in the State of *Maryland*, of the one part, and *Walter W. Hannon, Jr.*, and *Henry M. Hannon*, sons of the said *Walter W. Hannon, Sen.* of the county and State aforesaid, of the other part, witnesseth, that the said *Walter W. Hannon, Sen.*, as well for, and in consideration of the natural love and affection which he, the said *Walter W. Hannon, Sen.* hath, and beareth unto the said *Walter W. Hannon, Jr.*, and *Henry M. Hannon*, as also for the better maintenance, support, livelihood and preferment of them, the said *Walter W. Hannon, Jr.*, and *Henry M. Hannon*, hath given, granted, aliened, enfeoffed, and confirmed, and by these presents doth give, grant, alien, enfeoff, and confirm unto the said *Walter W. Hannon, Jr.*, and *Henry M. Hannon*, their heirs and assigns, one-half of all my personal estate of which I may die possessed, to the only proper use and behoof of them, the said *Walter W. Hannon, Jr.*, and *Henry M. Hannon*, and their heirs and assigns forever.    In witness whereof, I have hereunto subscribed my name and affixed my seal the day and year first before written.

W. W. Hannon, [*Seal.*]"

This deed was duly acknowledged and recorded on the 17th September, 1832, among the land records of *Charles* County.

The citation was issued as prayed, upon the return of which was endorsed by the sheriff, " Cited *Julian, Lemuel, Euphenia, Henry W.*" " Not cited the rest."    *William G. Robey* appeared on the 27th November, 1838, and prayed for an extension of time.    The cause was then continued from time to time, and orders of publication for the absent heirs granted and published, until June term, 1839, when the following docket entry appears in the case.    " Testamentary paper ordered to be recorded—case off on payment of costs."

On the 20th May, 1845, *William G. Robey*, the appellant, filed his petition in said Orphans court, stating that he intermarried with *Grace Ann Hannon*, the daughter of the late *W. W. Hannon*, and one of the residuary legatees under his last will and testament, and that his said wife died in June, 1841, leaving children.   That the deed of gift, of the 8th September, 1832, had been erroneously admitted to probate, said instrument having been expressly revoked and annulled by the revoking clause in the last will and testament of the said *W. W. Hannon*, executed long afterwards.   That at the time the said deed was admitted to probate and record, as a testamentary paper, no evidence was, or had been offered, to show that there was any error in date, as to either the said deed, or the said will, or that the said deed was of posterior execution to the will, or that it was even republished by the testator after the 16th May, 1838, (the date of the will,) and praying that the probate of said deed as a testamentary paper, may be revoked and vacated, and for general relief.

The appellees answered this petition, on the 22d July, 1845, admitting the death of *W. W. Hannon, Sen.*, and the probate of his will.   They further state, that the said testator executed the deed referred to, which was exhibited to said Orphans court for probate, at December term, 1838, accompanied with a petition, making the said *William G. Robey*, and *Grace Ann*, his wife, and all the other heirs of *Walter W. Hannon*, deceased, defendants.   That citation was issued against them; that said appellant and wife appeared in court, and obtained leave to shew cause, &c.   That such proceedings were thereupon had; that said paper was adjudged and decreed to be a testamentary paper, and ordered to be recorded as such. And your respondents deny and controvert the right of this Honorable Court to review, revise and correct said decree, as the same has already been adjudicated upon an adversary proceeding, and if any error was committed, a higher tribunal must correct it.   They deny the jurisdiction of this court to examine into the propriety and correctness of said decree; but,

nevertheless, assert that the same was correct, as said deed was not inconsistent with said will, referred to in the petition.

At the hearing of this application of the appellants, it was proved by *Walter Mitchell*, a competent witness, that at the time the paper of September, 1832, was offered and admitted to probate, no testimony was taken to shew an error in the date of any testamentary paper of said *Walter W. Hannon, Sen.* or of the re-publication by him of a testamentary, or any other paper, or any proof at all offered, as to the paper of the 8th September, 1832.

On the 29th August, 1845, the said Orphans court, one of the justices (HAWKINS) dissenting: "Ordered, adjudged and decreed, that the petition of the said *William G. Robey* be dismissed with costs."

From this decree, the present appeal was taken.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, MAGRUDER, SPENCE and MARTIN, J.

By WM. H. TUCK and ROBERT J. BRENT for the appellants.

1ST POINT.—That the deed of 8th September, 1832, being inoperative by the revoking clause of the will of May, 1838, was erroneously admitted to probate, especially as the donees, (the appellees,) as executors of the will, had themselves proved the will of May, 1838, as the only last will and testament of their testator.

Assuming the dates of these papers to be correctly stated, and that there was no re-publication of that of the 8th September, 1832, it is manifest, that the will of 1838 was the *only* paper that was entitled to probate as the last will and testament of the deceased; because the last clause expressly revokes all other wills. That instrument had been duly admitted to probate. The executors, (the donees in the paper they now set up as the will,) themselves propounding it, and swearing that it was "the true and whole last will and testament of the deceased that had come to their hands and possession, and that they did not know of any other."

Yet they afterwards come into the Orphans court and propound for probate the paper of 8th September, 1832, setting it up as a testamentary paper.    The Orphans court admitted it to probate, whether as the *only* last will and testament, or to be taken and considered with that of May, 1838, on the ground that both constituted the will of the deceased, does not appear. For either purpose, such an order was void, because the will of 1838 revoked *expressly* all former wills; ratified that and none other to be his last will and testament.

Being subsequent in date—revoking all other wills—and no prior will having been republished after the 16th May, 1838, it may be safely said that the instrument of that date was properly admitted to probate, and that the Orphans court erred in admitting the paper of 8th September, 1832.

2d POINT.—That the proceedings upon the application of the appellees of 20th November, 1838, were 'not plenary, or such as rendered an appeal necessary, and that under the circumstances of the case, and the character of the proceedings, it was competent for the Orphans court to revise said proceedings, and vacate the probate of the paper of September, 1832, on the application of the appellant.

Supposing the paper of September, 1832, to have been improperly admitted to probate as the will of the deceased, is it now too late to have the probate vacated?    If it could be shewn that the instrument was a forgery, the power of the court at any time to vacate the probate could not be questioned. And the same principle prevails where fraud has been practised in preventing the first probate.    1 *Wm's Executors*, 359, 371 ; *Wentw. Executors*, 111, 112, (*14th edition*,) *Allen vs. Dundas*, 3 *Term Rep.* 125, 129.

It will be observed, that the proceedings of the court, on which the appellees rely in answer to the petition of the appellant, do not shew that any proof was taken as to the execution of the paper of September, 1832.    It seems to have been considered as the act of *Walter W. Hannon*, merely, because it appeared to have been executed before justices of the peace as a deed, and recorded in the clerk's office.    As the appel-

lees rely on these proceedings, and they are exhibited with their answer, it may be assumed, that the record contains all the proceedings of the court at that time ; and indeed the testimony of *Walter Mitchell* shews that no proof was taken in any wise relating to that paper.

This then is the case of an instrument of writing—having none of the forms or characteristics of a will, propounded by the only persons in any manner interested in establishing it; not proved, even in common form, to have been the act of the party; none of the circumstances of its execution ascertained by the court; no *caveat* filed; no issues joined, and yet it is contended that this proceeding is to have all the binding and conclusive effect of a decree upon plenary proceedings.

If a will be perfect on its face, it may be proved in common form, by the oath of one or more witnesses, according to circumstances. *See* 1 *Wm's Ex'r*, 190, 191. This paper was not proved even by the executors, who are the appellees, although it was propounded by them. This court have said in the case of *Dorsey vs. Sheppard et al.* 12 *G. & John.* 192, " that the *factum* of a nuncupative will requires to be proved by evidence more strict and stringent than that of a written one, in every particular." The appellant does not contend that the same rule, in all its strictness, should be applied to the present case ; but it is respectfully submitted, that a mere testamentary paper should occupy a middle position, so to speak, between a will in form and a will by mere nuncupation, or at any rate, that it should be proved, as to the *factum* at least, by as strong evidence as would be requisite were it in the form of a last will and testament; and where there is a subsequent will, (as in this case,) already admitted to probate on the oath of the very parties setting up the testamentary paper, it is due to justice and to all parties concerned, that some enquiry should be made and proof taken.

This view is sustained by the act of 1798, ch. 101, sub-ch. 2, sec. 12, which provides, that if no objection be made to the probate, or no *caveat* be filed against the same before probate, it shall not be necessary to examine *all* the subscribing witnesses

unless they shall voluntarily attend—but probate may be made on such proof as is required to give efficacy to a will of personalty. (Thus implying that one subscribing witness at least, and all, if they attend, must be examined.) "Provided, (says the act,) that every executor or other person exhibiting a will, shall be examined on oath, whether or not he or she knows of any other will or codicil, and in what manner the will or codicil exhibited came to his or her hands." The court will find that no such examination was made, although there were witnesses to the paper.

It is contended, however, by the appellees in their answer, that the present application comes too late; that we should have appealed from the order admitting the paper to probat in 1839. The act of 1798, ch. 101, sub-ch. 2, sec. 7, provides, that "if a will of personalty be exhibited to the Orphans court for probate, and any of the next relations of deceased shall attend, or if notice shall appear to have been given, (as in the 6th section,) and no *caveat* shall have been made against the said will or codicil, the said court may forthwith proceed to take the probate." The 8th section provides, in case of the relations not appearing, and no notice being given, that " summons may issue, or notice be given by publication;" and if no objection be made, or *caveat* entered on or before a day fixed, the court or register may proceed to take the probate; but if objection shall be made on or before the day appointed, the said court shall have cognizance of the affair, and shall determine according to the testimony on both sides.

These sections of the act prescribe the manner of proving a will; the *seventh*, where no objection is made; the *eighth*, where there is objection. In the last case, (of objections being made,) "the court shall determine, according to the testimony on both sides." The 13th section of the same sub-chapter provides, that "if the probate of any will or codicil be taken as aforesaid *without contest*, any person, before letters are granted, may file a petition to the court, praying that the case be again examined and heard, and therefore, the court shall delay granting letters until a decision be had; and in case

letters shall have been granted, (says the act,) and any person shall file such petition, and the court, on hearing both sides, that is to say, the petitioner and the grantee of such letters, shall decide against the probate, the letters aforesaid shall be revoked, and the power of the party under the said letters shall cease; and the said will shall not be proved in any other county, unless the decision be reversed by the Court of Chancery, or general court." The appellant insists that the paper of September, 1832, was admitted to probate "*without contest.*" The court will find that the petition of the appellees propounding that paper for probate, was not answered by the appellant, or any other person; that no proof was taken to shew an error in date, in either that paper or the will; that the execution of the paper was not even proved, and that the record does not present any of the features of a plenary proceeding mentioned in the 16th and 17th sections of the act of 1798, ch. 101, sub-ch. 15.

If the probat was taken *without contest*, the parties were not obliged to appeal. The 13th section provides a remedy in addition to the right of appeal, by allowing any person to file a petition for a re-hearing; and there is no limit as to time.

It is contended by the appellant, that the same right to have the case re-heard exists now, as if the act of 1818, ch. 204, (relating to appeals from the Orphans courts,) had not passed. That act regulated appeals where the right of appeal existed before. The title shews this—" for the better regulation of appeals," &c. It does not deprive a party of any remedy that he might before have employed in the place of an appeal. Even conceding that the appellant might, under this act, have appealed from the probate of this paper in 1839, yet he was not obliged to appeal, or lose his remedy altogether. This act does not repeal, or in any manner impair the 13th section of sub-ch. 2, 1798, ch. 101, above recited. They exist together. If a party chooses to appeal, he may, by putting his case in a proper form; or he may resort to the remedy provided by the 13th section above mentioned.

But we contend that the present appellant could not have

appealed from the proceedings of 1839, on the application of the appellees to have the paper in question admitted to probat. The 3d section of the act of 1818, ch. 204, provides that in all plenary proceedings, the court shall reduce to writing and sign their decree; and in case of appeal, it shall be transmitted with the other proceedings. It will be seen that the action of the court is entered in the form only of a docket entry.— "Testamentary paper ordered to be recorded—case off on payment of cost." This is not such a decree in writing signed by the court, as the above section requires. It does not appear to be a final decree for probat. Not one word is said about proving the paper, or admitting it to probat; and taken altogether, it would seem that the court designed to reject the probat of the paper, but for some reason which does not appear, they allowed it to be recorded. The last clause of the entry, "off on payment of cost," is equivalent at common law to a *non pros,* and seems to be inconsistent with the idea of granting probat of the paper. If the proceedings of the Orphans court were not in such form as allowed an appeal to be taken, it was not the fault of the parties. The 3d section of the act of 1818, makes it "*the duty of the court* to reduce to writing and sign the order or decree." If it had been regarded by the court as a plenary proceeding, they would have put their decree in the form prescribed by that act. The proceedings not being plenary, but without contest, and not in the form for an appeal prescribed by the act, the appellant claims the benefit of the remedy furnished by the 13th section of sub-ch. 2.

No argument can be drawn from the length of time elapsed since the proceedings of 1839. The 13th section does not limit the parties as to time. They were left, in this respect, as the law stood prior to that act. In the case of *Satterthwaite vs. Satterthwaite, 3 Phillimore, page* 1, (1 *Eng. Ecl. Rep.* 351,) probate of a testamentary paper was reviewed after the lapse of nine years, and the paper rejected. In *Finueam vs. Gayfere, 3 Phillimore,* 405, (1 *Eng. Ecl. Rep.* 425,) probate was granted in 1807, and reviewed and revoked in 1820. In the last case,

the court said that time alone was no absolute bar to the application.

Although inconvenience may sometimes result from a re-hearing after so long a time, yet no such consequences can be predicated of the present application, because, if so, the appellees would have taken that defence in the answer. In point of fact, they cannot be damnified, because the parties are now contesting their respective rights under the testamentary dispositions of *Walter W. Hannon.* This the records of this court will shew. In the case of *Hannon vs. Robey,* (not reported,) the court said, that the paper of September, 1832, must, for all the purposes of that case, be taken as properly admitted to probate. (The question then came up incidentally, and the court could not review the question of probate on that record.) And the court, as if to account for what would otherwise have been error in the Orphans court, say that the paper may have been admitted to probate in consequence of there being error in the date of one of the instruments, or the one first executed may have been re-published afterwards. The proceedings shew that there was no such reason for the action of the Orphans court, in allowing probat of the paper.

The instrument having been illegally admitted to record by the Orphans court, it is respectfully submitted that it is not too late to have the proceedings reviewed; and that the intention of the deceased will be gratified, by pronouncing against its being considered as his will, and by giving full force to the will proper of May, 1838.

By Peter W. Crain for the appellees.

The appellees, as the executors of *Walter W. Hannon, Sen.,* exhibited on the 18th September, 1838, to the Orphans court of *Charles* county, a paper purporting to be the last will and testament of *Walter W. Hannon,* and the same was probated according to law. Subsequent to which, and on the 20th day of November, 1838, by the advice of counsel, the testamentary paper, dated the 8th September, was also exhibited by the executors for probate and record, and at the same time filing a

petition against the appellant and all the heirs, devisees and legatees of *Walter W. Hannon*, requiring them to appear in the Orphans court, to shew cause why said paper should not be admitted to record. By the proceedings of the Orphans court, it will appear that *William G. Robey*, the present appellant, appeared in person to the citation, and the case, at his instance, continued from December, 1838, to June term, 1839, when the paper was admitted to record as prayed. No appeal was taken from this decree, and no evidence reduced to writing; but, on the contrary, the appellant acquiesced in said decree until the 20th May, 1845, and then filed his petition to the Orphans court to review and revise a decree of a preceding Orphans court, and which had been acquiesced in by the petitioner and present appellant for nearly six years. The Orphans court of *Charles* County dismissed the petition, and the appellees contend that their judgment ought to be affirmed, because it is clear from all the proceedings in the Orphans court, that the question had received their deliberation and investigation, and according to the testamentary system, there was no right reserved to a subsequent court to review and revise said decree.

The Orphans court cannot exercise any jurisdiction by implication; it is a court of granted powers, given by statutes; and in the act of 1798, ch. 101, sub-ch. 15, sec. 20, there is a positive prohibition of all incidental power, or constructive authority. See *Scott vs. Burch*, 6 *Harr. & John.* 67.

By the statutes of *Maryland*, the Orphans court have an exclusive and an original jurisdiction in all cases of wills of personal property. The mode and manner of proving such wills are detailed in the act of 1798, ch. 101, sub-ch. 2, sections 1 to 13; and I think it must be conceded, by a fair and proper construction of all of the preceding sections, that no power of review is reserved to the court, when all the parties interested have been summoned and the will admitted to probate, and particularly, to one of the parties who appeared to the citation, and acquiesced in the judgment of the court for six years. It is in vain then for the appellant to invoke any

of the preceding sections to justify the Orphans court to review the order or decree of the Orphans court of 1839. It was binding and conclusive upon *William G. Robey,* the present appellant, who knew of said order, and acquiesced in it.

But it is contended, that the paper was admitted to probate, without contest and without evidence. The 15th sub-ch. sections 16 and 17, authorize the court to order plenary proceedings, when they may think proper, in a case of contest; but these sections have no application to this case. Here the party appellant appeared in court, and whether he contested or not, is immaterial, as he appeared to be satisfied with the evidence, and acquiesced in the judgment of the court, and hence, there was no necessity to reduce the evidence (upon which the court predicated their opinion,) to writing. But by the 1st sec. of the act of 1818, ch. 204, it is enacted, " that in all decrees, orders, decisions and judgments hereafter to be made by any Orphans court of this State, the party or parties who shall deem him, her or themselves aggrieved by such decree, order, decision or judgment, may appeal to the Court of Appeals." Here was a party appearing in the Orphans court, asking a continuance of the case—aware of the judgment of the court, and acquiescing in the decree for six years—does not appeal, and now asks for a review. Is he entitled to the indulgence and consideration of this court? He reposes upon the wrong—of which he now complains—for six years; and after the death of an important witness, and the decision of the Court of Appeals upon the will and the testamentary paper, (See *Hannon* and *Hannon vs. State, use of Robey,* at December term, 1843,) he appears in the Orphans court and files his petition for a review, upon the ground that there was error in the decree of 1839. By a reference to the two papers, the testator used the same language in giving one-half of his personal property to his two sons in the bill of sale, and one-third to his daughter in the will. He exhibits confidence in his sons, leaves them his executors; but in the last paper, he does not devise and bequeath them a dollar. Why did he not? He

recognized the validity and existence of the bill of sale, and when giving to his daughter, *Grace Ann Robey*, one-third of his property, he uses the following significant language: "*I give to my daughter one-third of my property that I die possessed of, and not otherwise willed and disposed of.*" *Frederick Nelson*, one of the witnesses to his will, was the writer of it, and looking to the language of the will and its devises and bequests, the inference is irresistible, that it was made in view of the existence and validity of the bill of sale, and all of its provisions were made with an understanding, that the bill of sale was to be taken and considered as a part of his will.

The appellees were prepared to prove by *Frederick Nelson*, the fact of the re-publication of said bill of sale at the time said paper was admitted to probate; but *Frederick Nelson* is now dead, having departed this life in 1844: and if the court now determine that the appellant can review this case in the Orphans court six years after a decree, and after sleeping six years upon it, and after the death of *Frederick Nelson*, the intimate friend and draughtsman of the will of *Walter W. Hannon*, it may be productive of great injustice to the appellees.

The objection that the testamentary paper was not proved, is entitled to little consideration. It was a paper that proved itself; and as the party now invoking the aid of this court was present in person and by *Walter Mitchell, Esq.*, as his attorney in the Orphans court, it is conclusive that he admitted it, or such evidence was taken as satisfied him and justified the court in passing their order.

The appellant also contends, that the order or decree of the Orphans court was not signed by the judges, and therefore, not such a decree as the law required; and they refer to the 3d section of the act of 1818, ch. 204, in support of their objection. The counsel for the appellees will refer the court to the 1st section of the same act, as a conclusive and satisfactory answer to the objection. The case of *Allen vs. Dundas*, 3 *Term Reports*, 125, is not an authority in point. That case supposes fraud in the obtention of a probate, and fraud vitiates

every thing; but in this case, no fraud, surprise or impropriety is or could be alleged against the appellees, and particularly by the appellant, who was present in person and by attorney in the Orphans court.

This court has decided that this decree could not be questioned, when coming up incidentally in another court,—and as the Orphans court is a court of competent jurisdiction, and indeed, in wills of personal property, of exclusive jurisdiction, it is conclusive and binding upon the parties interested. 1 *Wm's Ex'rs,* 158. So upon the law, the merits and justice of the case, the appellees are entitled to have the judgment affirmed.

This court reversed the order, and passed the following decree :—

This cause coming on to be heard, having been argued in writing and fully considered by the court, it is thereupon, this 13th February, in the year 1846, by the Court of Appeals aforesaid, and by and with the authority of the same, ordered, adjudged and decreed, that the decree of *Charles* County Orphans court of the 29th August, in the year 1845, be and the same is hereby reversed, with costs to the said appellants, both in the Orphans court and in this court; and this court, proceeding to decree as the Orphans court aforesaid should have decreed upon the petition of the said appellant, filed in said Orphans court, do further order, adjudge and decree, that the indenture of the 8th September, 1832, of *W. W. Hannon,* is not a testamentary paper, and should not have been admitted to probat and record, and that the order of the said Orphans court of June term, 1839, directing such indenture to be recorded, is null and void.

DECREE REVERSED WITH COSTS.