SARAH E. MITCHELL, *vs*. ELIZABETH A. MITCHELL, EXECUTRIX OF JAMES D. MITCHELL.—*December*, 1844.

On the 6*th August* 1837, *J*, by his last will, devised his sister *S*. an annuity, to be paid by his executrix, and charged the same on the whole of his real estate.   After a devise of a farm to his wife, for her life, he bequeathed the same "unto the eldest male heir of the body of his brother *H*., and the heirs and assigns of such male heir, if he shall live to attain the age of twenty-

one years;" and for want of such male heir, then the same estate should descend to the right heirs of the testator. The testator died in 1837; left no children, but a widow, (the devisee for life,) who died in 1841, a sister *S.*, of the whole blood, and his brother *H.*, of the half blood, *still alive*, who has a son, his eldest male child, born in 1838. HELD: that upon the death of the tenant for life, in 1841, living *H.*, the estate descended to the right heirs of the testator, his sister *S.*, the complainant in the bill.

Where an estate, charged with the payment of a legacy, descends to the legatee, the lien becomes extinct, by the union of the title, and the charge, in the same person.

One may be heir apparent, or heir presumptive, but not *very* heir, living the ancestor; no one is recognized as heir, until the death of his ancestor.

One cannot take, as *purchaser*, under the description of *heir*, or *heir male;* unless, when the estate is to vest, he has, by the death of his ancestor, become very heir.

This is the general rule, subject only to this exception, that when the intention of the testator can be made clearly to appear from the will, that he did not mean the words, heir or heir male, to be used in their technical sense, then the popular sense shall prevail.

*Prima facie*, the word *heir* must be taken in its technical sense, as a word of limitation.

Every contingent remainder must vest *eo instanti*, that the particular estate determines.

There are certain principles to be kept in view, when a court is called upon to construe a will: one is, and the most material, that the leaning should be towards technical words in their technical sense; and only suffering themselves to adopt another meaning, when there can be no reasonable doubt, from the context, that in such sense the testator used them; and that he could not have used them in their known and legal sense.

APPEAL from the Court of Chancery.

The bill, in this cause, was filed on the 16th February 1838, by the appellant, praying subpœna against *Elizabeth Mitchell,* claiming a discovery and account of the rents, and profits, and proceeds, of certain real and personal property, devised by *Francis J. Mitchell,* father of the complainant, and *James D. Mitchell,* testator of said *Elizabeth A.,* to *James D. Mitchell,* in trust for *Sarah E. Mitchell,* and for an annuity under the will of *James D. Mitchell.* An amendment, made *Henry S. Mitchell* and his infant son, *Joseph H. Mitchell,* parties defendants.

The questions of law decided, arise under the following clauses of *James D. Mitchell's* will, dated 6th August 1837, viz:

"I give and bequeath to my dear sister, *Sarah Elizabeth Mitchell*, an annuity of $500, to be payable and paid to her by my executrix, hereinafter named, in even and equal semi-annual instalments, for and during the whole term of the natural life of my said sister, accounting from the time of my decease; and I charge the whole of my real estate with the payment of the said annuity, in manner aforesaid.

I give and devise to my said wife, *Elizabeth Ann Mitchell*, my farm and real estate, situated in *Charles* county, called "*Myrtle Grove*," containing eighteen hundred acres, or thereabouts, be the same more or less. And likewise, my farm in Kent county, &c.; and all the slaves at "*Myrtle Grove;*" and the live stock, farming and plantation utensils, and implements of husbandry, on said farm, respectively being; and also my lot of land, situated, &c.; and generally, all the rest, residue, and remainder of my estate, real, personal, and mixed, not hereinbefore disposed of, wherever situate or being, inclusive of my library, books of accounts, &c. To hold said farms, lot of land, and real estate, and all said slaves, &c., unto my said wife, for and during the term of her natural life, without impeachment of waste.

It is, nevertheless, my will and desire, in case the debts owing to me and which may be collected, should fall short of an amount sufficient to discharge the just claims against me, that my said wife sell and dispose of, in her best discretion, so much of my personal property, other than that given and bequeathed to her in perpetuity, as may be necessary to make up that deficiency; but, if the moneys on hand at the time of my death, and those owing to me, and which may be collected, should exceed the amount of the just claims against me, then I give the surplus or difference to my said wife, to be applied to her own use. Moreover, I authorize and empower my said wife, if she shall think proper so to do, to sell such of my slaves as may not be necessary, for cultivating and carrying on

the "*Myrtle Grove*" farm, and domestic purposes thereon, and in the event of such sale, to apply the proceeds to her own use, or to dispose thereof, as to her may seem fit.

After the decease of my said wife, I give and devise my aforesaid farm, called "*Myrtle Grove*," and the slaves that may remain undisposed of; inclusive of the future issue and increase of the females; and also, the farming and plantation utensils and implements of husbandry, and live stock, that may be then remaining on that farm, unto the eldest male heir of the body of my brother, *Henry S. Mitchell,* and the heirs and assigns of such male heir forever, if he shall live to attain the age of twenty-one years, or leave lawful issue; and in case of the decease of such eldest male heir of the body of my said brother, in his minority, and without leaving lawful issue, then to the next eldest male heir, of the body of my said brother, and the heirs and assigns of such next eldest forever, if he shall live to attain the aforesaid age of twenty-one years, or leave lawful issue; and so on in succession, to the third, fourth, and other male heir, his heirs and assigns, if any such male heir there shall be, that may live to attain the aforesaid age of twenty-one years: and for want of such male heir of my said brother, then the same estate shall descend to, and devolve upon the right heirs of me, the said *James Davidson Mitchell,* in fee simple.

And as to my aforesaid farm, called "*Hunting Fields,*" and the live stock, farming utensils, and implements of husbandry thereon; and also, my aforesaid lot of land, in the city of *Baltimore,* I give and devise the same, after the decease of my wife, to such one or more of the children of my aforesaid brother, *Henry S. Mitchell,* as my dear wife, by her last will and testament, or by any instrument of writing, in the nature of, or purporting to be, a last will and testament, executed in the presence of, and attested by two or more credible witnesses, shall name and appoint; to have and to be entitled thereto, and his, her, or their heirs and assigns forever; and in default of such nomination and appointment, then to all the children of my said brother, whether already or to be hereafter born,

equally, their heirs and assigns forever. But if there be no such child, or descendant of a child, who shall live to attain the age of twenty-one years, then the said last described estate and property, shall descend to, and devolve upon the right heirs of me, the said *James Davidson Mitchell,* to be held by them, their heirs and assigns, forever. I authorize the leasing, for a long term, renewable for ever, any part or parts, or the whole of my aforesaid lot of land, in the city of *Baltimore,* for the best rents that can, at the time of making the lease or leases thereof, be obtained for the same; said lease or leases to be executed by my wife, at any time or times during her life; she may fix the rents, and reserve the same to her own use, for her life; and after her decease, to the use of the person or persons, who may, under this, my will, be entitled thereto. I wish it to be understood, that the person or persons, who may, according to the terms of this, my will, be entitled to the slaves, live stock, and moveable chattels aforesaid, after the decease of my wife, is, or are to receive and take the same, in the condition in which the property may be found at the time of my wife's decease; it being my will and intention, that my said wife, if she shall deem it necessary, may dispose of by sale, in her life time, any part or parts of the moveable chattels aforesaid, except the slaves so as aforesaid, necessary for the *"Myrtle Grove"* farm, and the proceeds apply towards her comfortable maintenance and support."

The facts connected with the will of *J. D. M.,* are stated in the opinion of this court.

After the filing of the bill, answers and proofs, the chancellor, (BLAND,) at March term 1843, decreed, that the bill should be dismissed, upon the grounds imputed to him in the opinion of the appellate court, and from which the complainant appealed.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS and SPENCE, J.

By ROBERT J. BRENT and REVERDY JOHNSON, for the appellants, who cited.

Mitchell *vs.* Mitchell.—1844.

1 *Savn. Uses*, 363, *Willis on Trus.* 124. 3 *Dessau. C. R.* 346, 388. *Ward on Leg.* 190. 1 *Ves. Jr.* 557. *Stallman on Elect.* 231. 3 *Bro. Parl. Cases*, 155. 7 *Gill & John.* 217. 1 *Sumner*, 1. 1 *Ves. Jr.* 97. 10 *G. & J.* 174. 7 *G. & J.* 248. *Fearne on Con. Rem.* 210. 4 *Kent. Com.* 253. 2 *Day*, 28. 6 *Cruise, Dig.* 38. 9 *Wheat.* 325. 1 *Mason*, 224, 6 *Harr. & John.* 374. 1 *Dyer*, 99. 1 *P. Wi.l* 232. 22 *Law Lib.* 425. 21 *Law Lib.* 316. 2 *Dessau.* 94. 3 *Wood Lec.*, 202. 1 *W. Black*, 1010.

WILLIAM SCHLEY, for appellee, cited.

24 *Law Lib.* 52. 23 *Law Lib.* 25. *Llewin on Trusts*, 102, 629, 630, *note* 639. *Ward. on Leg.* 143, 192. 3 *Bro. C. R.* 88. 1 *Ves. J.* 176. 3 *Atk.* 616. 1 *Eden*, 489. *Ambler*, 657, 7 *G. & J.* 220. 1 *Peters. S. C.* 236. 1 *Swan.* 359, *note* 381. 1 *Fonb.* 153. 15 *Wendell*, 290. 9 *Clark & Fin.* 583, 606.

ARCHER, J., delivered the opinion of this court.

The bill, as amended, seeks to enforce payment of a legacy left the complainant, by the last will and testament of *Francis J. Mitchell*, by the obtainment of a decree for the sale of *Myrtle Grove*, upon the ground, that the said legacy was, by the said last will and testament of *Francis J. Mitchell*, charged upon the said estate.

The bill, also, seeks an account of all the property left to *James D. Mitchell*, by the will of *Francis J. Mitchell*, in trust for the complainant.

The chancellor dismissed the complainant's bill, first, because the estate charged with the alleged legacy, had descended to the complainant; and secondly, because it did not sufficiently appear, that the personal estate bequeathed to *James D. Mitchell*, in trust, for the complainant, ever was managed by, and applied to his own use, by the said *James D. Mitchell*, without the consent of the complainant.

The only estate alleged in the argument of complainant, to be charged with the legacy, by the will of *Francis J. Mitchell*,

is the estate called *Myrtle Grove*. If that estate has, in fact, descended to the complainant, the charge, if one in point of law exists, has become extinct by the union of the title and the lien in the complainant.

We will, therefore, first proceed to enquire whether the estate called *Myrtle Grove*, has descended to the complainant.

This question grows out of the will of *James D. Mitchell*, bearing date on the 6th day of August 1837. *James D. Mitchell* died in the month of August 1837, and probate was had of his will, on the 23rd of August 1837. *James D. Mitchell* left no children, but a widow, *Elizabeth A. Mitchell* since deceased, and a brother, *Henry S. Mitchell;* a brother by the same father, but a different mother; and a sister, the complainant, of the whole blood. *Henry S. Mitchell*, has a son now living, named *Joseph H. Mitchell*, who is his oldest male child, and was born in March 1838. *Henry S. Mitchell* has also another son, an infant, now living. *Elizabeth Ann Mitchell*, the widow of *James D. Mitchell*, died in the month of August 1841.

The life estate devised by the will to *Elizabeth Ann Mitchell*, having terminated, the half brother of the complainant still living, the question is, whether the remainder to the eldest male heir of *Henry*, is vested in his oldest male child? or whether, in consequence of the life estates terminating before the death of *Henry*, the remainder to his oldest male heir is not void? in which event the estate would decend to his heirs : The complainant is the heir at law of the testator.

The terms used in the will, as descriptive of the remainder, are, "the first heir male of his brother *Henry*, and the heirs and assigns of such male heir forever, if he shall live to attain the age of 21, or leave lawful issue, &c." The cases which have been cited establish the law to be, that no one is recognized as heir until the death of the ancestor. In the language of *Mr. Justice Taunton*, a man may be heir apparent, or heir presumptive, but he is not very heir living the ancestor. One cannot, therefore, take as a purchaser under the description of *heir*, or heir male, unless, where the estate is to vest, he has, by

the death of his ancestor, become *very heir*. This appears to be a general rule, subject only to this exception, that when the intention of the testator can be made clearly to appear from the will, that he did not mean the word heir, or heir male, to be used in its technical sense, but in its popular sense, then the popular sense shall prevail. The intention should be by demonstration plain; and he who urges the exception, must demonstrate the intention, for *prima facie*, the words must be taken in their technical sense, as words of limitation. These principles will be found to be sustained by *Hob.* 33, 1 *Vent.* 334, 2 *Vent.* 311, 1 *P. Wil.* 229, 2 *Wil. Black.* 1010, 2 *Leon.* 70, 4 *Mod.* 153. And it is rightly said, by one of the judges, in delivering the opinion of the court, in *Winter vs. Perratt*, 9 *Clarke & Finnely Ap. Ca.* 669, "that what amounts to a plain demonstration of intention, so as to withdraw the term *heir* from its technical interpretation, must, in each case depend on the language used, and the circumstances under which it is used; and is not a question to be determined by reference to reported cases; but by a careful consideration of that language, and those circumstances, in the particular case under discussion."

We perceive no room to doubt, that the term *"heir"* was designed to be used by the testator in its technical sense; wherever in the will the word heir is used, it is used in its technical sense, as where he says the first *"heir male* of *Henry"* and *"his heirs and assigns."* In the latter instance, the word *heirs* is used by the testator in its technical sense; and again, on the failure of heirs male of *Henry,* who were to take in succession, then he devises over, to his *right heirs.* Can we, by any just construction, impute to the testator a different meaning to the same words, when used in the same will, and in the same sentence of the will, without any thing to indicate a difference? But again, when the testator devises *Hunting Field* to his wife, and gives her a power of appointment, and in case of her failure to exercise that power of appointment, devises the estate to the children of *Henry;* is it not still more apparent, that he was aware of the difference in the terms, heir of *Henry,* and child of *Henry?*

The annuity to the heirs at law, which has been bequeathed, with a charge on his lands, by the testator, and his presumed knowledge, that his sister, his heir at law, had designs to connect herself with a *monastery*, we do not think furnish considerations showing a different intent from the technical sense. The charge is on all his lands, as well *Hunting Field* as *Myrtle Grove;* and yet, in such case, on the failure of the contingency, the devise over is to the heir at law.

The case of 9 *Cla. & Fin., Ap. Ca.* 606, has been cited as decisive of this.    It is true, in that case, the terms used by the testator were considered as indicating an intention, in the use of words, different from their legal signification; but the judges who so decide, do so on the ground, that the term, *heir male of the branch of R. C's family*, in connection with the circumstances of the case, and the fact that *R. C's* family was known to the testator, gave to the word *heir male*, a different signification from its technical meaning.   Though even in this case, different as it is from the one before the court, much diversity of opinion prevailed among the judges ; and it strikes us, from a review of their opinions, there would have been but little difference of opinion, had the mere technical terms been used, without the qualifications affixed to them.

In conclusion, on this branch of the case, we beg leave to refer to the following observations of *Lord Brougham,* in delivering his opinion in the case above adverted to, "that there are certain principles fit to be kept in view, when we are called upon to construe a will, which raises such doubts as the present has raised.   One is, and the most material, that the leaning should be towards taking technical words in their technical sense; and only suffering ourselves to adopt another meaning, when there can be no reasonable doubt from the context, that, in such sense, the testator used them ; and that, he could not have used them in their known or legal sense.   This rule is founded on the consideration of the risk we run, in allowing a scope for conjecture and fancy, of making a will for him, which neither he himself made, nor the law recognized ; and if it be said that, by adhering to the technical sense, we shall

sometimes run the risk of giving a construction which the testator did not intend, the answer is, that this risk is common to both courses, and we avoid that other, and perhaps greater evil, of introducing uncertainty into the foundation upon which titles rest :" In these views, we fully concur.

If the word, *heir male*, is to be construed in its technical sense, then the limitation over, after the death of the tenant for life, is gone; as there could be no heir of *Henry Mitchell*, during his life. The rule being, that every contingent remainder must vest, *eo instanti*, that the particular estate determines.

The remainder failing to take effect, the estate descended on the death of the tenant for life on the complainant, who was heir at law, and her lien was sunk in her title to the land.

The principal cases which determine, that if there be sufficient in the will to show that the word heir, is used in such a way that the testator meant the word *"heir,"* to mean, *descendant*, or heir apparent, it shall be so construed, are, 1 *Ven.* 334, 2 *Vent.* 311, 1 *Pier. Wil.* 229, 2 *W. Black.* 1010. The first of these cases is *Burchett vs. Durdant.* There, a devise to the *heirs* of the body of *A.*, *now living*, was held to be a vested remainder, and it was so determined, because the words *"now living,"* were referred, not *to A.*, but *to the heirs of the body;* and it was apparent, from other parts of the will, that the testator knew that *A.* was in *esse* also. It was, on this account, adjudged, that the heirs of *A.*, took the remainder to the heirs of *A.*, during his life. As there was an heir apparent of the body of *A.*, then living, it was considered as a *designatio personæ*.

The case of *Darbison vs. Beaumont*, 1 *P. Wil.* 229, was a devise of lands to *A.* for life, remainder to his first son, in tail male, &c., and in default of such issue, *remainder* to the heirs male of the body of the testator's aunt, *Elizabeth Long*, lawfully begotten; and for default of such issue, remainder of all his lands, to his, the testator's right heirs. He also gave a legacy to *Elizabeth Long*, and legacy to her three sons, *A.*, *B.* and *C.*, of £500. The question was, whether the heir at law of the testator, or *A.*, the eldest son of *E. L.*,

was entitled to the testator's real estate. Three reasons are assigned for the judgment, that the heir at law did not take the estate. 1st. That the testator noticed, that the sons of *E. Long* were living; and that she, *E. L.*, was also living. 2nd. That the limitation of the right heirs of the testator was expressly, on failure of *issue* male of *E. L.*; so that the intent was plain, that the apparent heir of the body of *E. L.*, should take before his heir general; and 3rd. That it was the same as *Burchett vs. Durdant*, because, the words, then begotten, connected with the word, heirs male, were nearly similar. The words, then begotten, in this, were tantamount to "*then living*," in the former case.

It is very certain, that the case before us does not come within the reason of either of the above cases. There is no devise to an *heir male* of *H. W., then living*, as in *Burchett vs. Durdant*; for here at the death of the testator, *H. W.* had no issue born. The will, here, does not leave over the estate to the heirs at law, upon *the failure of issue*, as in the case of *Darbison vs. Beaumont*; but the expression is, on failure of *such heir* male, to the the heirs at law; nor are the words *heirs of the body of H. M. begotten*, found in this will; and if they had been, these words in the case before us, could not be understood to be tantamount *to heirs* then living, because, *H. M.* had no children *then living*. The case in 2 *Will. Black.* 1010, has been supposed to go further than either of the cases above adverted to. Here, the devise was to his son, *Richard Brooking*, and the heirs of his daughter, *Margaret*, jointly and equally, and for want of heirs male of *Richard Brooking*, at his decease, then to *the heirs and assigns of Margaret, lawfully begotten of her body*. The testator knew, that *Margaret* was living, and had at his death a son. In *Darbison vs. Beaumont*, the words, heirs male, of the body of the testator's aunt, *Elizabeth Long, lawfully begotten*, were considered tantamount *to, heirs of the body then living*, and as being the same in principle with the case of *Burchett vs. Durdant*. The case, therefore, of 2 *W. Black.* 1010, may be governed by one of the reasons, assigned for the judgment in *Darbison vs. Beaumont*.

We do not consider the case before us, as one, in which the testator has given plain indications of an intention, that the technical words he has used should be taken in their popular sense, and to mean descendants; and do not, therefore believe, that the cases above adverted to, can govern and control our construction of the will, now under consideration.

The above views render it unnecessary for us to enquire into the various questions, which in relation to this lien, were discussed, as growing out of the will of *F. J. Mitchell.*

In relation to the right of the complainant to an account, in reference to the property devised in trust to *James D. Mitchell,* for the use of the complainant under the will of *Francis J. Mitchell,* we concur with the chancellor in his views, as expressed in his decree in this case, and affirm his decree.

DECREE AFFIRMED.