# Henry S. Mitchell *vs.* Sarah E. Mitchell's Lessee.

Extrinsic evidence is only admissible to explain latent ambiguities in testamentary or other instruments of writing.

A decision of the Court of Appeals, is binding and final in all subsequent

litigation between the same parties and upon the same subject matter of controversy.

Where the Court of Appeals has given an exposition of a will, by which title to property has been settled, that exposition is irrevocable as between the same parties and those claiming under them.

Where the Court of Appeals has, in a case in chancery, construed a will and settled the rights of a party under it, by deciding that certain land devised by the will had descended to him, and he afterwards upon the same state of facts, brings *ejectment* for the same land, the former decision is conclusive.

APPEAL from the Circuit Court of Charles County.

*Ejectment* by the appellee against the appellant, for a tract of land called "Myrtle Grove," brought on the 17th of June 1852. The defendant appeared, and pleaded not guilty and took defence on warrant, which latter defence the court on motion of the plaintiff ordered to be stricken out. The defendant then applied for leave to withdraw his plea of not guilty, and for leave to ascertain his defence, but this application the court refused, and on this state of the pleadings the case was tried.

*Exception.* It is not necessary to state the charge of facts set out in the bill of exceptions, since the only question presented on the record involves the construction of the will of James D. Mitchell, dated the 6th of August 1837. The following is the portion of the will material to this case.

"After the decease of my said wife" (Elizabeth A. Mitchell, to whom he had previously given a life estate,) "I give and devise my aforesaid farm called Myrtle Grove, and the slaves that may remain undisposed of, inclusive of the future issue and increase of the females, and also the farming and plantation utensils, and implements of husbandry, and live stock that may be then remaining on that farm, unto the eldest male heir of the body of my brother Henry S. Mitchell, and the heirs and assigns of such male heir forever, if he shall live to attain the age of twenty-one years, or leave lawful issue, and in case of the decease of such eldest male heir of the body of my said brother on his minority, and without leaving lawful issue, then to the next eldest male heir of the

29    v.6

body of my said brother, and the heirs and assigns of such next eldest forever, if he shall live to attain the aforesaid age of twenty-one years, or leave lawful issue; and so in succession to the third, fourth and other male heir, his heirs and assigns, if any such male heir there shall be that may live to attain the aforesaid age of twenty-one years; and for want of such male heir of my said brother, then the same estate shall descend and devolve upon the right heirs of me, the said James Davidson Mitchell, in fee-simple."

The testator, James D. Mitchell, died in August 1837, and his widow, the tenant for life under the will, died in 1841. Henry S. Mitchell had a female child living at the death of the testator, but his eldest male child was not born until March 1838, which child is now living. The plaintiff is the sole heir at law of the testator, being his sister of the whole blood, and the land having been devised to the testator by his father, Francis J. Mitchell. Upon these facts the plaintiff offered the following prayer :

"That under the will of James D. Mitchell no title to the Myrtle Grove estate therein named can be set up in the eldest male heir of the body of Henry S. Mitchell, if the jury find that the said Henry S. Mitchell was alive at the death of Elizabeth A. Mitchell, who is named in said will; and if they further find that the eldest male child of said Henry S. Mitchell was not born in the lifetime of said testator. But in such case, the title to Myrtle Grove, as devised in and by said will to the eldest male heir of Henry S. Mitchell, lapsed and failed."

This prayer the court (WILLIAM MATTHEWS, Special Judge) granted, and instructed the jury as so prayed. To this ruling the defendant excepted, and the verdict and judgment being against him appealed.

In the case in 2 *Gill,* 230, where a bill was filed on the 16th of February 1838, by Sarah E. Mitchell, the plaintiff in the present case, for the sale of Myrtle Grove for the payment of a legacy charged upon it by her father, Francis J. Mitchell, the Court of Appeals dismissed the bill, because, in

their opinion, the land had, under the proper construction of the above clause in the will of James D. Mitchell, descended to said Sarah E. Mitchell, the complainant in that case.

The cause was argued before LE GRAND, C. J., MASON and TUCK, J.

*John M. S. Causin* and *Wm. Schley* for the appellant.

1st. The instruction, in the terms in which it is given, is clearly erroneous, for it construes the remainder as *contingent* upon the birth of the eldest male heir of the body of Henry S. Mitchell in the *lifetime* of the testator. Even, therefore, if the eldest male child had been *very heir* at the death of Elizabeth A. Mitchell, the tenant for life, according to the law as announced by the prayer, the remainder could not vest, unless such heir had been born in the lifetime of the testator; whereas all the authorities show, that the remainder must vest only *eo instanti* the determination of the *particular estate.* This was so decided in the case in 2 *Gill,* 239, where this very will was construed.

2nd. The instruction is erroneous in announcing as the meaning of the will, that the remainder was contingent on the death of Henry S. Mitchell, in the lifetime of the tenant for life. The words *"eldest male heir of the body,"* mean all the same as *"eldest male child of the body."* The word *heir* was not used in its technical but in its popular sense. There are certain general rules by which courts are to be guided in construing wills. 1st. Unless the devise contravenes some public policy or positive rule of law, the intention of the testator must prevail: it is the law of the case. 1 *Plowden,* 170. 2nd. Courts will be astute in discovering the intention, and in carrying it into effect. 9 *Gill* 437, *Chelton vs. Henderson.* 3rd. The court will look to all the surrounding circumstances, for the purpose of determining the object and the subject of the testator's bounty. 5 *Md. Rep.,* 304, *Walston vs. White.* It follows from this that each will must be construed *by itself,* must depend upon the peculiar circumstances attending it.     1

*Wash. Va. Rep.*, 56, *Shelton vs. Shelton.* 4 *Russell*, 532, *Pycroft vs. Gregory.* In this case the land had regularly descended to the testator, through the eldest male heir of his ancestors, and he was desirous to transmit it in the same line. He had himself no children: his brother Henry was married at the date of the will, and his wife had already one child, a daughter, and at the death of the testator was *enciente.* The appellee, Sarah, the testator's heir at law, was older than Henry. She had evinced a desire to enter a nunnery, so that there was no prospect of male issue from her. He gives to her an annuity for her natural life and *no longer,* which is made a *charge* on this very estate, which, it is said, has now descended to her. Is not all this inconsistent with the idea, that the testator designed her to have this land? But besides this, there was a devise of *personal estate* in this very clause of the will, which plainly shows that he was not using words in their strict technical sense. The word *heir,* will be construed to mean *child,* when it is clear that he or they were to be the *stirps* of a new succession. 3 *Md. Rep.*, 544, *Ware vs. Richardson.* 10 *B. Monroe,* 57, *Prescott vs. Prescott. Ibid.,* 106, *Jarvis vs. Quigley.* 12 *Do.,* 655, *Moore vs. Moore.* The word *"issue"* is, in England, in accordance with the policy there to favor descents, construed a word of limitation, but here the intention prevails and controls the construction of the word. 9 *Gill,* 436. But suppose the words are used in their technical sense: what is the technical sense of, "the eldest male heir of the body," in this State, since the passage of the acts abolishing entails? All the heirs now constitute but one heir; in England it means something but here it cannot mean any thing in a technical sense. But even in England, in modern times, this strict rule of *nemo est heres viventis* is sought to be avoided, and if it were *res integra,* would not have been adopted. The general leaning of the courts now is against enforcing it. 2 *Wm. Bl.,* 1010, *Goodright vs. White,* which clearly overrules *Archer's case,* 1 *Coke,* 66. But we have cases in England in this very point construing words almost precisely similar to these. 1 *Peere Wms.,* 229,

*Darbison vs. Beaumont.* 12 *Eng. C. L. Rep.*, 393, *Right vs. Creber.* 1 *Lib. of Law & Eq.*, 226. 9 *Clark & Finnelly*, 606 to 715, *Winter vs. Perratt.*

3rd. The question is not concluded by the case of *Mitchell vs. Mitchell*, 2 *Gill*, 230. The will was there construed only *incidentally.* The words quoted by Judge Archer in that case and construed by the court, are not the words of the will. The words there used are, "the first male heir of his brother Henry," whereas the words of the will are, "the eldest male heir of the body of my brother." The distinction is obvious: for an uncle or a nephew may be first male heir, whereas none but a child can be eldest male heir *of the body.* But that case was decided upon different facts, and between different parties. The bill there sought to charge the land, and that was the main point argued: the court were not unanimous in their decision, and two of the judges deciding the case sat also in the case of *Chelton vs. Henderson,* where the strict technical meaning of such words in a will was repudiated. But suppose the case is *res adjudicata,* the decision is not binding unless it settles the right between the parties, and would operate as an estoppel. 4 *G. & J.*, 345, *Shafer vs. Stonebraker.* No judgment was there passed which in its nature could be pleaded to this action. The parties were different, the present appellant being a party there only in his character of administrator *d. b. n.*, of the personal estate of James D. Mitchell. Again, the rights of the *infant* son of Henry S. Mitchell are involved in this proceeding, but he is not a party here nor was he in the former case. But the courts sometimes overrule their own decisions. See 5 *G. & J.*, 133, *Steiger vs. Hillen,* and 8 *G. & J.*, 55, *Sellman vs. Bowen.* They sometimes change their opinions. 4 *Gill*, 128, *McCall vs. Hinkley.* 7 *Gill*, 447, *Albert & wife, vs. Winn & Ross.* And 8 *Gill*, 472, *Kettlewell vs. Stewart.* See also on this point 4 *Md. Rep.*, 165, *Hammond vs. Inloes,* and 1 *Gill*, 1, *Stevenson vs. Reigart,* where the case of *Stevenson vs. Schriver,* 9 *G. & J.*, 324, was disregarded. 3 *G.*

*& J.*, 397, *Green vs. Johnson*, overruling *Grant vs. Bell*, 4 *H. & McH.*, 419.

*Robert J. Brent* for the appellee.

The second branch of the first proviso in the instruction granted by the court, viz: "if they further find that the eldest male child of said Henry S. Mitchell was not born in the lifetime of said testator," does not operate to the prejudice of the appellant, because the prayer would have been granted without it. It is merely a *further restriction* upon *our right* to recover.

In the case in 2 *Gill*, 235, where the same will was construed upon the same state of facts and between the same parties, the Court of Appeals decided:

1st. That the words "eldest male heir," were used by the testator in their technical legal sense, and not signifying "heir apparent," or child, could not be gratified until the death of Henry S. Mitchell, leaving such *male* heir, for "*nemo est heres viventis*."

2nd. That the Myrtle Grove estate was devised to Elizabeth A. Mitchell, the widow, for life, with a contingent remainder to such person as, at her death, might be the "*eldest male heir of the body of Henry S. Mitchell.*"

3rd. That this contingent remainder must vest at or before the expiration of the particular life estate.

4th. That Henry S. Mitchell surviving Elizabeth A. Mitchell, there could be no heir of his body to take at that date, and therefore the contingent remainder lapsed and failed.

We cannot suppose that after so elaborate a decision between the same parties and on the same clause of the same will, this court will suffer this adjudicated question to be reopened. As this case involves no great principles of public law requiring re-examination and review, but is a simple question of the construction of a particular will, it would be an alarming precedent to allow the former decision of this court on this same will and between the same parties to be even questioned, much less reversed.

The parties were the same; because the eldest male child of the appellant in whose right the present ejectment is defended, was directly a party to the former suit, and the appellant was himself a party as administrator, and actually carried on the defence in that case as in this, in the name and right of his child. Therefore, if the child of the appellant would be concluded by the former adjudication, so would any one who afterwards in his name, or for his benefit, sets up the adjudicated and condemned title of that child. But this court has by its decision put this question at rest. · In *Milburn vs. The State*, 1 *Md. Rep.*, 13, a majority of the court would have ruled the point differently, but for a previous decision of the Court of Appeals, which they considered obligatory, although made in a cause between other parties. In *Hammond vs. Inloes*, 4 *Md. Rep.*, 164, the court reviewed very elaborately its former decisions on the conclusiveness of former adjudications, and declared, "that if a court respects its own decisions in analogous cases, there would seem to be more reason for adhering to them where the facts are the same, though between different parties." See also 1 *Md. Rep.*, 324, *Thomas vs. Doub.* *Ibid.*, 395, *Young vs. Frost.* 5 *H. & J.*, 268, *Hammond vs. Ridgely.* 5 *Md. Rep.*, 488, *Alexander vs. Worthington.* We dismiss this part of case by referring to the language of Judge Earl, as quoted in 4 *Md. Rep.*, 164: "If an exposition is given to a will or deed, fully defining the rights of the parties, &c., it should be deemed irrevocable, and never again touched where the same persons, &c., are concerned in the same contestation."

But if this court will tolerate an argument on the merits of the title formerly tried between these parties and judicially condemned, we can do but little more than adopt the learned and able argument of this court, as delivered by Judge Archer, in 2 *Gill*, 235. We shall, however, refer to a few additional authorities to support, if need be, the solemn judgment of this court. That the word "heir," or "heir of the body, "in deeds or wills, standing alone, has a technical and well defined legal sense, and denotes the person upon whom the la wat

the ancestor's death casts the inheritance, and to give it any other sense it must be qualified by something in the context showing that it was used in a different sense, so as to denote "heir apparent," "child," "issue," &c., is well established by authorities. 1 *Fearne*, 209, *sec. 6, and note.* 2 *Jarman on Wills*, 1. In *Buck vs. Nurton*, 1 *Bos. & Pul.*, 57, Chief Justice Eyre says: "Every testator ought to be supposed to take legal words in a legal sense, unless, according to the marginal note in *Hobart*, there be demonstration plain of an intent to use them in a different sense." In *Hodgson vs. Ambrose, Dougl.*, 337, Buller, Justice, says: "If a testator makes use of legal phrases, or technical words only, the court are bound to understand them in a legal sense; they have no right or power to say that the testator did not understand the meaning of the words he has used, or to put a construction on them different from what has been long received, or what is affixed to them by law." See also *Archer's case*, 1 *Coke*, 66. But this very case was settled as far back as the case of *Challoner vs. Bowyer*, 2 *Leon*, 70. In that case the testator devised his lands to his younger son in tail, and for want of issue, "to the heirs of the body of his eldest son." The younger son died without issue, living the elder son, whose issue was the tenant in the assize, (defending the case;) the court held, that there could be no heir of the body of the eldest son while he survived, and that there was no distinction between a will and a grant in respect to the meaning of the words heirs of the body. This is our identical case in principle, and almost in facts, for the younger son had an estate tail to support the contingent remainder to "the heirs of the body of the elder," and it was held, that when the estate tail failed the remainder was gone, because the elder son could have "no heir of his body" while he survived, though he had issue living and claiming the land. That case was even stronger than this, for the limitation over to the testator's daughters was in default of "issue of the eldest son," thus indicating an intention that the issue of the eldest son should take, but the words "heirs of the body" required technical

legal heirs. See also 2 *Jarman on Wills*, 13, and 9 *Clark &*
*Finnelly*, 694.

MASON, J., delivered the opinion of this court.

We do not deem it important to pass any opinion upon the
peculiar structure of the appellee's prayer, by which this case
is presented, a question so forcibly argued by the opposite
counsel. Whatever may be the supposed defects of this
prayer, a reversal of the judgment, with a view to their cor-
rection, would not ultimately vary the substantial merits of
the controversy, which rests upon facts, few, simple and
undisputed, and which, in our judgment, could not be mate-
rially altered or added to, by any subsequent proceedings
which might be had in the case, short of the introduction of
testimony intended to assail the validity of the will itself;
and we do not understand the appellant as contending for any
such object. This is not a case where extrinsic evidence
would be admitted to explain the meaning or intention of the
testator. Extrinsic evidence is only admissible to explain
latent ambiguities in testamentary or other instruments of
writing, and such we understand to have been the case of
*Walston vs. White*, 5 *Md. Rep.*, 297, relied upon in argument
by the appellant's counsel.

The present record discloses a question of title dependent
upon the interpretation of the language used by the testator
in his will, considered with reference to the condition of the
several parties who claim under it, and we must proceed to
give that interpretation. At this point we are met by the
counsel for the appellee with a decision of the former Court
of Appeals, (*Mitchell vs. Mitchell*, 2 *Gill*, 230,) in regard to
this *identical will*, in connection with the same state of facts
now before us, and it is insisted that the former decision has
settled the law of the case, and that we are concluded by it.
The *conclusiveness* of that decision is the controlling, and
indeed the only question involved in this appeal.

A decision by the Court of Appeals must be regarded as
binding and final in all subsequent litigation between the

30    v.6

same parties, and upon the same subject matter of controversy: and if an exposition of a will has been made, by which the title to property has been settled, that exposition should be deemed irrevocable as between the same parties and those claiming under them. These principles are distinctly affirmed by the case of *Hammond's Lessee vs. Inloes,* 4 *Md. Rep.,* 138.

On the other hand it is urged that the present parties, the form of action and the questions submitted, are not the same with those of the former appeal. This may be in part true, yet it cannot be denied that the Court of Appeals, on the former appeal, has given an interpretation to this will, and has passed upon and settled the rights under it, of one at least, of the parties to this record; and if we were now, as to other parties, to give it a different construction, it would lead to the anomalous condition of things of different persons having different and conflicting rights and *interests* under the same will. Such conflict, confusion and injustice should not be sanctioned.

The plaintiff in this suit is certainly so far bound by the former decision, as to be forever precluded from enforcing her annuity as a charge upon this real estate. Her right to do so was the *precise question* presented and decided on the former appeal, and the court said the annuity could not be enforced because the land itself under the will belonged to the plaintiff, and that the claim to the annuity was merged in the title.

If we were now to give an opposite construction to this will, and vest the title in another, it must readily be seen that the appellee would lose both land and annuity. For such a result the appellant's counsel even would not *directly* contend, yet it is manifest that to adopt their views, we would either be bound to arrive at such a result, or we would be compelled to reverse a decision of the former Court of Appeals, not for any mistake or error, as respects the facts of the case, but for mere *error of judgment.* We are not prepared for either alternative.

However much we might be disposed to adopt and sanc-

tion the views of the appellant's counsel, so ably enforced in the course of their argument as general principles of law, still we feel constrained to regard ourselves as concluded by the interpretation given to this will by the Court of Appeals, in the case of *Mitchell vs. Mitchell*, 2 *Gill*, 230; and while we might consider ourselves at liberty to disregard that decision as a general rule of law for the future interpretation of wills and deeds, yet we must regard it as final and conclusive upon the will now before us.

*Judgment affirmed.*