Mitchell *vs.* Mitchell, et al.

(Decided March 11th, 1864.)

---

SARAH E. MITCHELL *vs.* HENRY S. MITCHELL & OTHERS.

ANNUITY—APPORTIONMENT OF: DEVISE.—A testator devised an annuity to his sister, charging its payment upon the *whole of his real estate*, which consisted of two tracts of land of equal value, one of which was specifically devised, and the other, under the provisions of the will, became vested in the sister *by descent* as the *heir at law* of the testator. On a bill filed by the annuitant seeking to have one-half of the annuity paid to her out of the land specifically devised. HELD:

That the land descended being amply sufficient for that purpose, was chargeable with the whole annuity, in exoneration of the land specifically devised.

APPEAL from the Circuit Court for Charles County, sitting in Equity:

The original bill in this case was filed in 1853. The appellant was the complainant. She claimed relief in her bill, in several particulars. But, at the hearing, the only question which remained open, and the only one discussed, was this: whether a tract of land called "Hunting Field," in Kent County, was liable to contribute towards the payment of an amount, claimed by the complainant to be due to her, as arrears of an annuity given to her by the will of James D. Mitchell. The following are the uncontroverted facts:

James D. Mitchell departed this life in August 1837. By his will, he gave to his sister, the appellant, an annui-

ty, for life, of five hundred dollars, to be paid to her in semi-annual instalments, by his executrix, and he charged the whole of his real estate, with the payment of said annuity, in manner aforesaid. The testator appointed his wife, Elizabeth Ann Mitchell, his executrix, to whom he devised and bequeathed all his estate, real and personal, for life, without impeachment of waste. His real estate consisted of "Myrtle Grove," in Charles County, and "Hunting Field," in Kent County. He devised "Myrtle Grove," after the decease of his wife, "unto the eldest male heir of the body of his brother, Henry S. Mitchell," &c., &c., and for want of such male heir, he directed that the same should *descend to, and devolve upon,* his right heirs, in fee-simple. And he gave and devised said tract, called "Hunting Field," after the decease of his wife, to such one or more of the children of his brother Henry S. Mitchell, as his said wife, by her last will, should appoint to have and be entitled thereto; and, in default of such appointment, then to all the said children, born or to be born; and he directed, that if there should be no such child, &c., then, that said last mentioned estate should descend to, and devolve upon, his right heirs.

Elizabeth Ann Mitchell, the wife of the said testator, survived him, and obtained letters testamentary, as executrix, and took possession, as tenant for life, of all his estates, and paid said annuity, in full, up to her decease. She died in 1841. Henry S. Mitchell the brother of the said testator, survived her, having a number of living children, and, as she made no appointment as to "Hunting Field," the children of Henry S. Mitchell, under the will of James D. Mitchell, became entitled to that estate. A question, however, arose as to "Myrtle Grove." The complainant insisted, that the limitation of the estate, in remainder, of "Myrtle Grove," was not effectually disposed of by the will. In a suit which occurred after the death of the tenant for life, between the now appellant and said Henry S. Mitchell, it was decided, that said remainder did not pass

under said will, but descended to the complainant, who, being of the whole blood, was his only heir at law. That case will be found in 2 *Gill*, 235. The appellant subsequently brought an action of *ejectment*, for the recovery of "Myrtle Grove," and obtained judgment, and was put into possession. This latter case is reported in 6 *Md. Rep.*, 225. She remained in possession until 1856, when she sold and conveyed "Myrtle Grove," free of the alleged bar for arrears of said annuity.

It was conceded that the whole of the personal estate of James D. Mitchell had been consumed in the payment of his debts. It was also conceded, that "Myrtle Grove" and "Hunting Field" were of equal value. On the part of the complainant it was admitted, that "Myrtle Grove" was chargeable with one-half of said annuity; but it was insisted that the other half ($250 per annum) and the interest thereon, should be paid by the "Hunting Field" estate.

On the part of the defendant it was insisted, that said annuity was merely a pecuniary legacy; and that the charge on the real estate did not alter its character, although it made the real estate, failing the personal, but not exclusively, nor primarily, liable for its payment. And it was further contended, on the part of the defendants, that "Myrtle Grove," not being effectually devised, *descended* to the complainant as heir at law of James D. Mitchell, and that, by the settled law of Maryland, such descended estate was to be applied to the payment of said annuity, in priority to the estate devised; and that as such descended estate was *more* than ample for payment of said annuity in full, the "Hunting Field" estate was wholly exonerated from the charge.

The Court below, (CRAIN, J.,) by an order passed July 22nd, 1861, dismissed the bill of complaint, from which order the complainant appealed.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Henry May* for the appellant :

Our bill was filed in December 1853, and the executrix is admitted to have died in 1841. The administrator *d. b. n.* had a year to settle his accounts in, say to 1842. Our bill therefore was filed in less than twelve years from 1842. But no lapse of time will bar an annuity charged on real estate, as decided in *Luckett vs. White*, 10 *G. & J.*, 480. *Allender vs. Trinity Church*, 3 *Gill*, 166. *Haffner vs. Dickson*, 2 *H. & J.*, 46. *Livingston vs. Livingston*, 4 *Johns. Ch. Rep.*, 392.

Miss Mitchell's annuity of $500 a year was only merged or extinguished so far as part of the real estate charged, descended to her as heir at law of the testator who created the annuity. The case of *Mitchell vs. Mitchell*, 2 *Gill*, 235, shows how the "Myrtle Grove" estate descended to the complainant. *Chancellor Kent*, (4 *Com.*, 100,) states, that "merger is produced, either from the meeting of an estate of higher degree with an estate of inferior degree, or from the meeting of the particular estate and the immediate reversion in the same person." On *page* 101 he says: "If they, (the estates,) are held in different legal rights there will be no merger, provided one of the estates be an accession to the other merely by act of law, as marriage descent, &c. * * * * But the accession of one estate to another, is when the person in whom the two estates meet is the owner of one of them, and the other afterwards devolves upon him by the act of the party, or by act of law, or by descent." The charge is merged by descent of the lands charged on the annuitant. *Glenn vs. Spry*, 5 *Md. Rep.*, 117. In the case of these same parties in 2 *Gill*, 235, 241, this Court decided that a *charge* placed on "Myrtle Grove" by the will of their father, Frances J. Mitchell, had become *extinguished* or *merged* by the descent of that estate on her, as heir at law, of the devisee James D. Mitchell; and so did *Chancellor Johnson* decide. 3 *Md. Ch. Dec.*, 77.

Now we have a charge placed on all his real estate by James D. Mitchell, to secure the complainant in her annui-

ty of $500, payable semi-annually.   By the death of the
widow of the testator, who was tenant for life under his
will, the fee-simple of "Myrtle Grove" descended on the
annuitant, and thus she could not hold a lien on her own
real estate.   It was discharged *quoad* "Myrtle Grove," by
the merger of the charge in the fee-simple descended to the
annuitant, but not so *quoad* "Hunting Field," the residue
of the testator's real estate made subject to the annuity by
his will equally with "Myrtle Grove."  The title to "Hunt-.
ing Field" passed to the children of Henry S. Mitchell, as
*devisees*, and there can be no merger as to that.

   We maintain that the merger of the annuity is only *pro*
*tanto*, that is, such proportionate part thereof is extin-
guished as the value of "Myrtle Grove" bears to the value
of "Hunting Field," and this rule is well established,
"that an estate may merge for one part of the land, and
continue in the remaining part of it."  4 *Kent Com.*, 100.
4 *Prest. Con.*, 88, 89.   2 *Prest. Abst.*, 12, sec. 5.   In *Jen-*
*kins vs. Van Schaack*, 3 *Paige's Ch. Rep.*, 242, it was de-
cided, that where a person who has an annuity charged on
real estate, inherits half of the estate so charged as heir of
the devisee of the grantor of the annuity, *one-half* of the
annuity is merged by the descent cast.   And it results of
course that the other half of the annuity survives against
that half of the real estate which did not descend to the
annuitant.   The only difference between this case in 3
*Paige* and our case, is that there the annuitant inherited
as heir of the devisee of the grantor of the annuity, while
here Miss Mitchell inherits as heir of the grantor himself.
But we maintain upon the authorities hereafter relied on,
that this makes no distinction under such a will as the one
under review.   At present we cite the case in 3 *Paige*, to
show, that the descent of one-half of the estate charged,
only extinguishes half of the annuity.   In *Johnson vs. Rice*,
8 *Greenlf.*, 157, it was held, that where a mortgagee re-
leased to one of several alienees or holders of the mortgaged

property, which had been divided. The lien was released *pro tanto* in respect to value. *Young vs. Williams* 17 *Conn.*, 393. *Doton vs. Russell*, 17 *Conn.*, 146.

We never denied the general doctrine as decided in *Chase vs. Lockerman*, 11 *G. & J.*, 185, and in *Dugan vs. Hollins*, 11 *Md. Rep.*, 41, that lands descended are primarily liable to pay charges on the real estate, in exoneration of lands devised. But we contend, that the will of James D. Mitchell takes this case out of the general principle, because he *intended*, in the events which have happened, that "Myrtle Grove" should be enjoyed by his heir at law as much as "Hunting Field" should by his devisees; and therefore upon the most conclusive authorities the heir at law, though taking his title by descent, stands in all other respects as much favored as if he were a devisee. The authorities supporting this exception are full and clear. The *note A* of Mr. Cox, in *Chaplin vs. Chaplin*, 3 *S. Williams*, 367, draws the distinction which is to govern this case, and shows that the application of descended estates primarily and in exoneration of estates devised, is to be limited to the case where one estate is devised and the other is permitted to descend *sub silentio*. If, as he says, the testator intends his heir at law to have the descended estate, as where he devises it to his heir at law, the Court will put the heir at law on as favored ground as the devisee, because of the intention of the testator, although the heir takes the land by descent and not by the void devise. And this is our very case, as shown by the will of James D. Mitchell, in which he expressly provides, that in default of the contingent remainders to the male heirs of Henry S. Mitchell in succession, "then the said estate ('Myrtle Grove') shall descend to and devolve upon the right heirs of me, the said James Davidson Mitchell, in fee-simple." *Lord Hardwicke* thought the heir should not exonerate the devisee in any case. *Galton vs. Hancock*, 2 *Atk.*, 425, 426. But modern decisions have undoubtedly established, that a *devisee* may, as a general rule, call on the heir at law to

32      v. 21

apply the estate descended, to protect the devised lands. 2 *Jar. on Wills,* 526, 527. 11 *G. & J.,* 185. 11 *Md. Rep.,* 41. And it is said by *Jarman,* that this preference given to the devisee over the heir at law, was finally settled, (with disapprobation of the rule.)    2 *Jar. on Wills,* 528.    But on the same page the distinction taken by Mr. Cox in his note to 3 *P. Williams,* 367, is approved.    The case of *Brideman vs. Seymour,* 3 *Beav.,* 368, decided, that where the testator devised certain real estates to his heir at law, subject to the payment of an annuity and other charges, and then devised other estates generally to other persons *(not charged)* the heir was entitled to claim contribution from the devisees by reason of debts which had fallen on the estate descended to the heir, and this because the testator expressly designed the heir should have his lands as well as the other devisees should have their lands.    The reasoning and authorities in that case are conclusive of the present question. It will be observed in 3 *Beav.,* 368, that it is stated that the testator died before the *Statute of 3rd and 4th Wm. IV., ch* 109, and therefore it was unaffected by that statute, which expressly makes the heir take as devisee in cases of devise to him.

The principle then to be extracted from this unbroken current of authorities is simply this: That where the testator devises a portion of his lands, and permits the residue to descend *silently* to his heir, the descended lands are *primarily* chargeable, and the *devised* lands *secondarily*. But where the testator has *expressed* in his will the desire, that his *heir* should have one portion, and the devisee another, both are *equally* regarded in his intentions, and in such case the heir is not to be prejudiced by the fact that he takes his title by descent, and not by devise.

It can make no difference in this case whether the testator willed "Myrtle Grove" directly to his heir at law, or upon the failure of the contingent remainders limited to the heirs male of Henry S. Mitchell. In either case he *designed* the *heir at law* to take it; in the one case absolutely,

and in the other contingently, and when the contingency has occurred, the intention is as controlling as if no condition had been prescribed.

Nor can there be any distinction whether the testator expressly devised "Myrtle Grove" to his heir at law, or declared (as he has done in this will,) That for default, &c., then it should descend on his heirs at law. In both cases the title would pass by descent and not by devise, and in both the *intention is express*, that the heir should have his land as well as the devisee his. And it is the saving effect of such *expressed* intention that secures to both heir and devisee equality of burden, which is equality of equity.

Finally, we conclude that we are entitled to a decree against the appellees for half the arrears of the annuity.

*William Schley*, for the appellee:

1. The children of Henry S. Mitchell took and held "Hunting Field," *as purchasers*, under the will of James D. Mitchell. They took " equally," and, therefore, took as tenants in common—not as parceners. *Morris vs. Harris*, 9 *Gill*, 19. *Gilpin vs. Hollingsworth*, 3 *Md. Rep.*, 190.

2. Sarah E. Mitchell took " Myrtle Grove," in her character and capacity *as heir at law* of James D. Mitchell. The contingent limitation to the eldest male heir of Henry S. Mitchell having failed to take effect, the remainder of " Myrtle Grove," expectant on the decease of the tenant for life, descended to the complainant as sole heir at law. She did not take as purchaser, because such was not the meaning of the testator; and even if he had, in fact, so intended, the rules of law would have controlled his will, and have given her the property by her worthier title, as heir. The descent was not broken. *Mitchell vs. Mitchell*, 2 *Gill*, 235. *Langley vs. Sneyd*, 3 *Brod. & Bing.*, 243. 7 *Eng. C. L. Rep.*, 427. *Allam vs. Heber*, 1 *Wm. Bl.*, 22, or *S. C.*, 2 *Strange*, 1270. *Chaplin vs. Leroux*, 5 *M. & S.*, 14. *Plunket vs. Penson*, 2 *Atk.*, 292.

The fact that the annuity was charged on the land, makes no difference. *Allam vs. Heber, ut supra;* and *Mitchell vs. Mitchell,* 2 *Gill,* 235. *Stevens vs. Gregg,* 10 *G. & J.,* 147. *Mitchell vs. Mitchell,* 3 *Md. Ch. Dec.,* 82. *Medley vs. Williams,* 7 *G. & J.,* 62.

3. It is clear that the union in the complainant of the right to the annuity, and the ownership of "Myrtle Grove," extinguished the charge as to that estate, and this is conceded by the bill. If, therefore, the annuity be an entirety, and incapable of apportionment, it would follow, as a consequence, that the charge would be also extinguished as to "Hunting Field." But without insisting. that this would be the result if "Myrtle Grove" had vested in the appellant, as a purchaser, and not by descent, it is, nevertheless, the settled law in Maryland, that lands *descended* are liable in priority to lands *devised,* and, therefore, "Myrtle Grove" is to be *first* applied, and "Hunting Field" stands exonerated from the charge entirely, as "Myrtle Grove" is more than sufficient to pay. There can be no apportionment between estates where one of them is primarily liable. Apportionment, and liability to contribution, are co-relative. *Chase vs. Lockerman,* 11 *G. & J.,* 185. *Dugan vs. Hollins,* 11 *Maryland,* 77.

There is no analogy between the present case, and a case of devise to a designated person *as devisee;* but who, by construction of law, is in by his title as heir. But here there is no devise to the appellant. She does not take *under the will;* but she took *by inheritance,* what had not been effectually disposed of by the will. *Torrance vs. Torrance,* 4 *Md. Rep.,* 11, 26.

GOLDSBOROUGH, J., delivered the opinion of this Court:

The object of the bill of complaint filed in this case by the appellant, was to recover a *pro-rata* proportion of an annuity bequeathed to her by the last will and testament of her brother, James D. Mitchell.

By this will an annuity of five hundred dollars was given

to the appellant, "to be payable and paid to her in even and equal semi-annual instalments of two hundred and fifty dollars each, for and during the whole term of the natural life of my said sister," and this annuity is charged on the whole of the testator's *real estate.* This estate consisted of a tract of land in Charles County called "Myrtle Grove," and another tract or farm in Kent County known by the name of "Hunting Fields." For the purposes of this controversy it is agreed, that these tracts of land are of equal value. It is also agreed that the personal estate of the testator, after deducting therefrom the payment of the annuity up to August 1840, was exhausted in the payment of the debts of the testator and expenses of administration.

This Court, in the case of *Mitchell vs. Mitchell,* 2 *Gill,* 230, decided that Sarah E. Mitchell, the annuitant, and the appellant in this case under the provisions of her brother's will, took the estate in "Myrtle Grove" by descent, she being the right heir of her brother; and further decided, that so far as "Myrtle Grove" was chargeable with the annuity, it "was sunk in her title to the land." The union in the appellant of the right to the annuity in this case, and the ownership of "Myrtle Grove," must extinguish the charge as to that estate.

There is no question raised here about the devise of "Hunting Fields;" it is conceded that the parties named in the will took this estate as devisees.

As illustrative of our opinion, it may be proper to state some propositions of law which are well established, and which we deem important to the solution of the question involved in this controversy.

1st. That in a case in which the same quantity and "quality of estate is devised as the devisee would have acquired by descent, the title shall vest by the worthier title, by descent and not by devise." See *Medley vs. Williams,* 7 *G. & J.,* 61. It was also said, "a will that does not operate, is as no will. A will may operate in part, and in

part be inoperative." And further, " when the clause in the will does not pass the land to the devisee, but leaves it to descend to his heir at law, the will is so far inoperative, and a partial intestacy therefore exists."

2nd. The annuity in this case being chargeable on the whole real estate, may be assimilated to other charges, as debts, &c., and therefore the rule for marshalling assets would be ordinarily applied here.

In *Chase vs. Lockerman*, 11 *G. & J.*, 185, and *Dugan vs. Hollins*, 11 *Md. Rep.*, 41, the rule is stated to be to apply, first, the personal estate, then lands devised to be sold for the payment of debts, *then lands descended*, and *lastly*, estates specifically devised, even though they are *generally charged* with the payment of debts.

Under this last proposition it is contended, by the appellant, that though it may be conceded that this is the established law in general, the case at bar is an exception, and he refers to 3d *Pere Williams*, 367, *note A*, and *Beiderman vs. Seymour*, 3d *Bevans R.*, 368. From these authorities is deduced the principle, that where the testator devises a portion of his lands, and permits the residue to descend *silently* to his heir, the descended lands are primarily chargeable, and the *devised* lands secondarily; but where the testator has *expressed* in his will the desire that his *heir* should have one portion, and the devisee another, both are *equally* regarded in his intentions, and in such case the heir is not to be prejudiced by the fact that he takes his title by descent, and not by devise. And it is the saving effect of such *expressed* intention that secures to both heir and devisee equality of burden, which is but equality of equity, and therefore the "Hunting Fields" estate was chargeable with $250, one half of the annuity, and the interest thereon.

On the part of the appellee it is contended, that the union in the appellant of the right to the annuity and the ownership of "Myrtle Grove," extinguished the charge as to that estate, and it being the settled law in Maryland that

lands descended are liable in priority to lands devised, "Myrtle Grove" is first to be applied, and "Hunting Fields" stands exonerated from the charge entirely, as "Myrtle Grove" was more than sufficient to pay.   There can be no apportionment between estates when one of them is primarily liable.

In addition, it may be said that the intention to charge both estates arose from the expectation that the devise of both would take effect.   In fact the devise of "Myrtle Grove" was only defeated by the use of terms to which the Court in the case in 2 *Gill* gave a technical signification, and because the father of the first heir male was living at the death of the tenant for life, the Court applying the legal principle, *nemo est heres viventis.*   By reference to the will it will be seen, that the testator provided for a number of successive male heirs, and their issue, and at the conclusion of the devise, without any reasonable expectation that all the contingencies therein provided for would fail, designates no particular person to take, but says, "the same estate shall descend to, and devolve upon his right *heirs,*" and not heir, for if he had indicated but one heir, it might be supposed that the testator intended to designate his sister.   On the contrary, it would be difficult to imagine that the testator could know who would be his right heirs; and it may be regarded a permissive descent, rather than an intentional devise.   While we entertain great respect for the very able judge who delivered the opinion in the case of *Biederman vs. Seymour,* and recognize the equity of that decision, yet we think that case may be distinguished from the one before us.

In this case we consider the title of the appellant to "Myrtle Grove" as simply a title by descent, standing upon the same ground as if it had not been mentioned in the will.   And under the established law of this State, it must be held as chargeable with the whole annuity, to the exoneration of "Hunting Fields," which is specifically devised.

A decree will be signed affirming the decree of the Cir-cuit Court.

*Decree affirmed with costs to appellees.*

(Decided March 24th, 1864.)