# JOHN T. EDWARDS, Adm'r of NORMAND BRUCE, *vs.* UPTON BRUCE.

An application to the orphans court to *revoke* letters of administration can only be made within the same time after the party applying has *knowledge* that letters had been granted as that provided by law, within which an *original application* for letters is to be made.

The courts, upon the principle of analogy, will, by construction, apply express statutory restrictions, in regard to time, to cases of similar character, where no such express legislative provisions exist.

This principle is peculiarly appropriate to testamentary affairs, because the testamentary laws clearly manifest an intention to guard against all needless delay, and secure as prompt and speedy settlements of estates as practicable.

Decisions in which *no opinions* are filed will not be regarded as authority in other cases, unless the similarity is so apparent as to leave scarcely a doubt in regard to the propriety of applying the principles clearly shown to have been *necessarily* involved in and settled by the questions actually decided.

CROSS-APPEALS from the Orphans Court of Allegany county.

Normand Bruce, of Allegany county, died intestate, on the 7th of October 1854, leaving a widow, brothers and sisters, a mother, but no child, grandchild or father. The widow, on

the 15th of October 1854, renounced in writing her right of ad-ministration upon the estate, "desiring at the same time that letters of administration may be granted and committed unto John T. Edwards," and on the same day four of the brothers and sisters filed their written assent to the appointment of Edwards. Letters of administration were accordingly granted to Edwards on the 17th of October 1854.

On the 4th of June 1855, Upton Bruce, one of the brothers of the intestate, living in the county, filed his petition, insist-ing that upon the renunciation of the widow and the other parties above named, the right to administer passed to him, and that he ought to have been cited to appear before admin-istration could be granted to a stranger, and praying that the letters granted to Edwards may be revoked and letters granted to him.

Edwards answered this petition, insisting that the widow renounced solely upon the ground that he should be the ad-ministrator, and that she refused to renounce until it was dis-tinctly understood, that all the brothers and sisters of the in-testate assented to his appointment, and that the written re-nunciation of several of the brothers and sisters was filed by Henry Bruce, who, at the time, professed to act for all the brothers and sisters of the deceased, including Upton Bruce, the petitioner.

The widow then filed her petition, stating that she was in-duced to decline the administration upon the distinct under-standing that Edwards was to be the administrator, and insist-ing that if the letters of Edwards are revoked letters shall be granted to her, and for this purpose she retracts her renuncia-tion.

Upon these petitions and answers a large mass of testimony was taken, upon which various questions were raised and dis-cussed in this court, which need not be stated, inasmuch as the ground upon which the decision of this court is based ren-ders it unecessary, all the facts material to an understanding of the opinion of this court being stated therein.

On the 10th of July 1855, the court below ordered the let-ters granted to Edwards to be revoked, and that the widow be

authorised to retract her renunciation, "and that upon her retraction letters of administration will be granted to her." From this order both Edwards and Upton Bruce appealed.

The cause was argued before Le Grand, C. J., Eccleston and Tuck, J.

*George A. Pearre* for Edwards, argued, that Upton Bruce having been informed on Christmas day 1854, that Edwards had been appointed administrator, and at that time having employed Henry Bruce as his counsel, "in relation to the settlement of the estate of Normand Bruce generally," and Henry Bruce, as his counsel and in his name, having, in January 1855, filed a petition in the orphans court treating Edwards as administrator, touching the sale of the personal estate to the widow, and having from Christmas 1854 to the 4th of June 1855, delayed all proceedings to have the letters of Edwards revoked, has *waived*, in legal contemplation, his right to the administration. As soon as informed of the fact that the widow and the other heirs had consented to the appointment of Edwards, it was his duty *then*, without a delay of over five months, to have taken the proper steps to get the administration into his own hands. It may be admitted, for the sake of the argument, that as to Upton Bruce the letters were improvidently issued, and yet the intervening facts above indicated may render it wholly improper and illegal to revoke the letters. The grant of letters improvidently is not a *void* act, but merely voidable. This is evident from the fact that they must be revoked before other letters are granted. Being only a voidable act any acquiescence, either *positive* or *negative*, is a confirmation of the act. In this case Upton Bruce positively treated Edwards as administrator, by filing his petition in the orphans court, and negatively by delaying five months to take any steps to have the letters revoked. In such a case the maxim applies, *qui tacet consentire videtur.* Suppose Upton Bruce had been advised by Henry, on Christmas day, that the widow and all the brothers and sisters had renounced the administration; and suppose that letters had not

been granted to Edwards until the 4th of June 1855, surely Upton Bruce, with this notice, not having come forward to take administration would be considered as having renounced or given up his right. The same facts which would justify the court in assuming his unwillingness to take the letters would surely authorise the presumption of *waiver* of his right, knowing for the same length of time the court had granted the letters and having taken no steps to set them aside.  6 *Md. Rep.*, 472, *Lefever vs. Lefever.*  The law neither requires a written renunciation or a regular summons to be issued by the orphans court to enable that court to make an appointment of a person not first entitled.  By the act of 1798, ch. 101, sub-ch. 5, sec. 7, the proceedings to exclude those *prima facie* entitled to administration "shall, in all respects, be the same, as hereinbefore directed, for excluding any person who shall be named in a will as executor;" and by sec. 23 of the same sub-ch., if the parties entitled "refuses to appear, on proper summons *or notice* administration may be granted at the discretion of the court." *Notice* here means notice in fact, no matter how acquired, not notice by a summons or other legal precept served by a law officer.  If so the word "*summons*" would alone have been used, as that is the notice by a law officer or formal notice.  In the sections of this act of 1798, relating to executors, the law does not require a written renunciation or a regular summons to give the orphans court the power to appoint a person not named in the will.  These provisions show that summons was only to give *notice,* and where *notice* exists summons is superfluous.

We say, therefore, that the orphans court could not, after so long a lapse of time after actual notice to Upton Bruce, properly revoke the letters granted to Edwards.  Upton Bruce should have appealed from the order of the court appointing Edwards, and not have instituted a new proceeding.  At all events, such a proceeding to revoke the letters should not be permitted after the time limited by law for appeals from decrees or orders of the orphans courts.  This time is thirty days by the act of 1818, ch. 204.  This court say, in 6 *Md. Rep.*, 478, "if parties could open decrees and judgments on appeal

in this indirect way, it would virtually amount to a repeal of the laws limiting the time within which appeals should be taken, and would lead to interminable litigation." This proceeding is in the nature of a bill of review, which, by analogy, the courts have limited to the same time allowed for an appeal. From decrees of the higher courts this time is nine months. From decrees of the orphans court thirty days. By analogy, then, this proceeding, in the nature of a bill of review, ought not to be allowed after thirty days from the appointment of the administrator, or at most, as Upton Bruce in this case had notice of the appointment of Edwards, at Christmas 1854, he should be limited to filing his bill of review to the time allowed for an appeal, counting from that time. In the case in 9 *Gill*, 465, *Owings vs. Bates*, which was an application to revoke letters of administration, it was made within the thirty days. So also in 6 *G. & J.*, 349, *Ward vs. Thompson.* In this case it was over five months after Upton Bruce had knowledge of the previous grant of letters to Edwards. In 7 *G. & J.*, 207, *Berrett vs. Oliver*, it was expressly decided, that the bill in that case should have been filed in nine months after the passage of the act of Assembly, *that being the time fixed by the act of Assembly for limiting appeals from decrees or orders of the Court of Chancery.* See also 11 *G. & J.*, 137, *Oliver vs. Palmer & Hamilton.* These cases show that the courts will, by analogy, apply express statutory restrictions, in regard to time, to similar cases, where no such express legislative power exists, and are *conclusive* on this point.

*William Price* for Bruce, argued, that the letters to Edwards were improvidently and improperly granted, so far as Upton Bruce was concerned. He never *renounced*, and never *consented* that the administration should go to Edwards. He is one to whom the law gave the right of administration, and was passed over without proper summons or notice, and letters given to a stranger. The act of 1798, ch. 101, sub-ch. 5, secs. 10 to 15, designate the persons in their order who shall be entitled to administration, and sub-ch. 5, secs. 7 and 23, and sub-ch. 4, sec. 1, show that a person having the right to administer

and residing within the State, is entitled to summons and notice. Here Upton Bruce, though living in the county, was neither notified nor summoned. It is the duty of the orphans court, when administration has been improvidently or improperly granted, to revoke the letters and give the administration to the person entitled. 2 *H. & G.*, 51, *Raborg vs. Hammond.* 9 *Gill*, 465, *Owings vs. Bates.* 8 *G. & J.*, 79, *Hoffman vs. Gold.* No time is fixed by the statute within which such an application must be made, and the courts have no authority to apply any limitation of time upon any supposed analogy. We therefore say, that the petition of Upton Bruce filed in this case was filed in time, and should have been granted. The letters could only be revoked for the purpose of granting them to him. They could not be revoked for the purpose of granting them to the widow, because she agreed that Edwards should be appointed. The decision of the court below is, therefore, manifestly wrong and must be reversed.

(The argument on the other points in this case, as to the right of the widow to *retract* her renunciation and her power to *delegate* the authority to administer to Edwards, need not be stated, as no opinion was pronounced on them by this court.)

ECCLESTON, J., delivered the opinion of this court.

On the 10th of July 1855, the orphans court of Allegany county passed an order revoking the letters of administration previously granted by them to John T. Edwards, on the personal estate of Normand Bruce, deceased, and authorising Elizabeth Bruce, the widow of the deceased, to retract her renunciation of her right to letters of administration on said estate. The order likewise made provision, that upon such retraction letters would be granted to the widow. From this order cross-appeals were taken.

The view we propose to take of this case, relieves us from the necessity of saying anything in regard to many of the points presented in argument.

The counsel for Edwards says, that if Upton Bruce had at any time a right to claim a revocation of the letters, he had waived that right by lapse of time before his application to

have the letters revoked was made.    And in this we think he is right.

The letters were granted on the 17th of October 1854.    It is in proof, that Upton Bruce had a knowledge of that fact on the 25th of December following.    It likewise appears, that in January 1855, Henry Bruce appeared in the orphans court, as counsel for the brothers and sisters of Normand Bruce, deceased, including Upton, and in their names and in his own, filed a petition against John T. Edwards, administrator of Normand, and Elizabeth Bruce, the widow, touching the sale of the personal estate of the deceased to the widow by the administrator, and other matters, which petition was subsequently withdrawn by consent.

The petition, asking for a revocation of the letters granted to Edwards, was not filed until the 4th of June 1855.    Because of the lapse of time between the date of the letters and the filing of this petition, it is contended that the court were wrong in granting the prayer of the petition.    This, it is said, is only relying upon a principle which has been adopted in other cases, based upon the analogies of the law.    And because the right of appealing from the order granting the letters is limited by law to thirty days, this application to revoke the order should have been filed within the same time after the party had knowledge that the letters had been obtained.

We think the principle of analogy should apply in the present case, but it applies with more propriety to the time provided by law within which an original application for letters is to be made than to the time of taking an appeal.

An examination of cases in which the principle relied upon has been recognised, will show the correctness of its application in the present instance.

In *Berrett vs. Oliver*, 7 *G. & J.*, 191, by legislative enactment it had been attempted to vacate and annul certain deeds and decrees, but the court held the law to be unconstitutional for such a purpose.    Admitting it, however, to be unconstitutional in that respect, still the counsel of Mrs. Berrett contended the law might be considered as only operating upon the remedy by which the rights of the parties were to be adjudicated, so as

50    v.8

to remove the conclusiveness of the decree, and to authorise its reversal by such a bill of review as that then under consideration. But the bill having been filed by Mrs. Berrett more than two years after she had information of her husband's death, the court thought it too late. And although there is no provision in the act in regard to time, the court say, "within what time must that bill have been filed? In nine months after the passage of the act of Assembly, if preferred by Berrett and wife; and within nine months after the death of Berrett, or the knowledge of that event had reached her, if filed by Mrs. Berrett after discoverture; that being the time fixed by the act of Assembly limiting appeals from decrees and orders of the Court of Chancery."

In *Oliver vs. Palmer & Hamilton*, 11 *G. & J.*, 137, more than nine months after the decree had been passed, a petition was filed in chancery, alleging that the decree was obtained by mistake, which was not discovered by the petitioners until after the time appointed for regularly taking an appeal therefrom, and praying they might be permitted then to appeal. To the petition depositions were annexed, stating that the decree was obtained by mistake. Upon a motion to dismiss, it was insisted by the appellees that the appeal was taken too late, being nearly six months after the decree was brought to the knowledge of the appellants; but the court thought otherwise, because where fraud or mistake is alleged, there is no positive limitation in the act as to the time when the appeal shall be taken. The act referred to is, 1826, ch. 200, sec. 14, in which it is provided, that all appeals from decrees of the Court of Chancery shall be prosecuted within nine months from the time of making such decrees, and not afterwards, "*unless it shall be alleged on oath or affirmation that such decree was obtained by fraud or mistake.*" This language, most certainly, does not impose any restriction as to the time when an appeal shall be taken in cases of alleged fraud or mistake; and whilst the court are willing to rely upon the absence of any express limitation in such cases, so as to sustain the appeal before them, because the appellants had knowledge of the mistake for only six months, nevertheless, we understand

them as holding, that if instead of nearly six, it had been over nine months, the appeal would have been too late. Such is evidently their meaning when they say: "A just construction of the act would allow him the same time to appeal, after the discovery of the fraud or mistake, that all other persons had under the act."

In *Hitch vs. Fenby*, 6 *Md. Rep.*, 224, a bill was filed for the purpose of opening and vacating a former decree. Various grounds were relied upon, and amongst them usury. In dismissing the bill the court say, "If at any time after the decree was enrolled and the term had passed, the complainant had a right to open the decree because of its being based upon a claim affected by usury, we think he could only have done so within nine months after the decree, or within the same time subsequent to his being informed of the usury." The facts showing that before and at the time of the decree, the complainant had knowledge of the transactions constituting the alleged usury, and his bill not having been filed for some seven years thereafter, it was held too late. In support of their view the court refer to the cases of *Berrett vs. Oliver*, and *Oliver vs. Palmer & Hamilton*, and also to *Alexander's Chancery Practice*, 182.

These authorities show the willingness with which courts, upon the principle of analogy, will, by construction, apply express statutory restrictions in regard to time, to cases of similar character, where no such express legislative provisions exist. And in reference to testamentary affairs this principle is peculiarly appropriate, because in our testamentary laws the legislature has clearly manifested an intention to guard against all needless delay, and to secure as prompt and speedy settlements of the estates of deceased persons as practicable. For which purpose much pains has been taken to provide for the granting of letters with promptness.

The only cases we have seen in which the right of the orphans court to revoke letters, because improvidently granted, has been sustained, are *Ward vs. Thompson*, 6 *G. & J.*, 349, and *Owings vs. Bates*, 9 *Gill*, 465. In each the application to revoke was made within thirty days after the letters had been granted.

*Robey vs. Hannon,* 6 *Gill,* 463, is not a case in which any question arose as to the revocation of letters. A will had been admitted to probat and letters testamentary granted. After which an instrument in the form of a deed, at the instance of the executors, was also admitted to probat as a testamentary paper. Some years subsequently, Robey, (the appellant,) filed a petition praying that the probat of the deed as a testamentary paper might be revoked and vacated, which petition was dismissed by the orphans court, and the Court of Appeals reversed that decision, but filed no opinion. They decreed, however, the deed not to be a testamentary paper, that it should not have been admitted to probat and record, and that the order of the orphans court, "directing such indenture to be recorded, is null and void."

In the argument of the appellant's counsel various points were presented, one of which was, that under the circumstances of the case their client, (Robey,) could not have appealed from the proceedings of 1839, admitting the deed to probat. If the court adopted that view, then there was no foundation on which, from analogy, the limitation of time, in regard to appeals, could be applied to the case before them. But in the absence of an opinion of the court, we are unwilling to speculate or conjecture as to what were the reasons which induced their decision. And we are at all times indisposed to consider such cases as authority in others, except where the similarity is so apparent as to leave scarcely a doubt in regard to the propriety of applying the principles clearly shown to have been necessarily involved in, and settled by, the questions actually decided.

The act of 1798, ch. 101, regulates the time within which persons entitled to letters testamentary or of administration shall apply for such letters; and on failure to make application within the time prescribed the party may be excluded, and the person next entitled may be appointed; and in some cases of such failure the court have a discretion in regard to the appointment. The proceedings proper for excluding an executor are prescribed in sub-chapter 3. And in sub-chapter 5, sec. 7, it is provided, that "the proceedings to exclude such as *prima*

*facie* appear entitled to the administration of the estate of an intestate, shall in all respects be the same as hereinbefore directed for excluding any person named in a will as executor or executrix." The 23rd sec. of the latter sub-ch. provides: "If there shall be neither husband nor wife, nor child, nor grandchild, nor father nor brother, nor sister nor mother, or if these be incapable or decline, or refuse to appear on proper summons *or notice*, or if other relations and creditors shall neglect to apply, administration may be granted at discretion of the court."

By the 5th section of sub-ch. 3, where a sole executor is out of the State when the will is authenticated or proved, he is allowed six months to come in and file his bond. But if he returns to the State within the six months "in order to expedite the granting of letters there may be a summons, and the same proceedings thereon as if he or she had been in the State at the time of authentication and probat, and upon the said proceedings letters of administration may be granted before the expiration of six months." And the same section also declares, "It shall not be necessary to proceed by summons as aforesaid, in case the party be as aforesaid, out of the State at the time of authentication or probat, and shall return as aforesaid; but letters of administration, after the expiration of the said six months, may be granted, without such proceeding, by summons against the executor or executrix so returning."

Whilst absence from the State allows the executor six months to appear and file his bond, he will forfeit his right to letters within a much shorter period if in the State when the will is admitted to probat. If present at the probat he must file his bond in thirty days, unless he thinks proper to take a certified copy of the will for the purpose of obtaining letters in a county where the will was not proved; in which case he may be allowed seventy days instead of thirty. See sub-ch. 3, sections 2 and 3.

Under the 4th sec. of the same sub-ch., when the executor is not present at the probat a summons may issue against him, returnable not less than twenty, nor more than sixty days after date; and if it is returned "summoned," and he shall not

appear accordingly, or appearing shall not, within twenty days thereafter, file his bond; or if two summones shall be returned "*non est,*" and he shall not appear, according to the tenor of the second summons, or appearing shall not, within twenty days thereafter, file a bond, letters of administration may be granted. But in case of sickness, or accident, or reasonable excuse, the court may, at discretion, allow a further time, not exceeding forty days after such return or appearance.

Thus it will be seen that the period of time between the date at which Upton Bruce had knowledge of Edwards' letters and the filing of this petition, is much longer than that which is required to exclude an executor from his right to letters, in consequence of his failing to appear and file his bond after being summoned, or after two summonses returned *non est*, when he is not out of the State. And in this instance Upton Bruce was in the State.

After letters of administration have been granted, and a will is proved according to law, in which an executor is named, the executor is required to apply for letters testamentary within thirty days thereafter, according to the provisions contained in the 4th sec. of sub-ch. 5.

Even considering the filing of the petition in January, in which Upton Bruce was a party, as the date when he received notice of Edwards' letters, he had notice more than four months before his application to have them revoked. And believing, as we do, that under the 7th and 23rd sections of sub-ch. 5, in connection with the other provisions of the act of 1798, which have been referred to, a party, *prima facie* entitled to the administration of the estate of an intestate, may be excluded from that right after "proper summons *or notice,*" in case he fails to appear and claim his right, even for a less period than four months, it would seem to be proper that the petitioner, Bruce, should not be allowed to apply for a revocation of the letters in the present case after he had knowledge of them, and by a proceeding in court had recognized their existence upwards of four months previous to making his application.

Adopting the doctrine clearly recognized in *Berrett vs.*

*Oliver,* and the other cases of like character referred to, we think the order revoking the letters granted to Edwards should be reversed. The costs however in both courts must be paid out of the estate of the deceased.

These views necessarily dispose of both cases before us under cross-appeals; for if the orphans court erred in revoking Edwards' letter they had no authority to allow Mrs. Bruce to retract her renunciation. The order must, therefore, be reversed on both appeals. But we do not express any opinion as to whether the declaration by the court, of their intention to grant letters to the widow, in case she should retract her renunciation, is a subject proper for revision under an appeal.

*Order reversed.*