## Nathan B. Stocksdale and Elizabeth his Wife, *vs.* John H. Conaway, Admr. *d. b. n., c. t. a.* of Henry Cover.

A *renunciation*, by a party entitled, of the right to letters of administration *de bonis non*, filed in the orphans court, is *binding* upon the party making it, and cannot subsequently be retracted, nor can the right to administer be *delegated*.

An application to *revoke* letters of administration *de bonis non*, made within sixty-eight days after the grant of such letters, is in proper time.

Appeal from the Orphans Court for Carroll County.

This appeal is from an order in reference to letters of administration *d. b. n., c. t. a.* upon the estate of Henry Cover, deceased.

The record shows, that Henry Cover died in 1857, leaving a will, by which he devised to his wife, all his estate, real and personal, for life, and at her death the same to be sold by his executor, and the proceeds to be equally divided between his son, Josiah S. Cover, his daughter, Susan Conaway, and his grand-daughter, Hannah Spurrier. To his daughter, Elizabeth Stocksdale, he gave $10 per year, for ten years, and appointed his son-in-law, Reuben Conaway, his sole executor, who qualified as such, but died in December 1858, before settling up the estate. Josiah S. Cover then filed in the orphans court the following renunciation of his right to administration *d. b. n.,* signed but not sealed by him:

"To the judges of the orphans court for Carroll county, I, Josiah S. Cover, late of Carroll county, do hereby refuse to administer on the estate of Henry Cover, late of Carroll county, deceased, and do therefore renounce all my right and claim to said administration *de bonis non,* desiring, at the same time, that letters of administration *de bonis non* may be granted by your honorable court to John H. Conaway, of the county aforesaid. Witness my hand and seal, this 20th day of December 1858."

On the same day (20th of December 1858) the court, on his application, granted letters to said John H. Conaway, and on the 28th of February 1859, the appellants filed their peti-

tion asking that these letters might be revoked and the same granted to the petitioner, Elizabeth. This petition alleges, that the petitioners were not advised of the action of the court in granting letters to John H. Conaway, or of his application for them, until the 28th of February 1859, (the day on which their petition was filed,) as no notification of such an application was ever conveyed to them; that the petitioner, Elizabeth, is the oldest child of the said Henry Cover, deceased, and is, by law, entitled to letters of administration *d. b. n.*, *c. t. a.*, in preference to the said John H. Conaway.

In his answer to this petition, John H. Conaway states, that the petitioners were advised of the death of Reuben Conaway, the executor, on the 30th of November 1858, and made no application for letters to be granted to them, or either of them. He denies that the petitioners were not advised of the grant of letters to him until the 28th of February 1859, and on the contrary alleges, that they had knowledge thereof on or before the 1st of January 1859. He also avers, that Josiah S. Cover, who would have been, and is, entitled to the letters in preference to the petitioners, or either of them, renounced in his favor, and with the express understanding and agreement, that the letters should be granted to him. He further insists, that the letters should not be revoked and granted to the petitioners, because they have set up a false, spurious, pretended and stale claim against the estate to the amount of $950, and had brought suit thereon, at the preceding September term of the Circuit court for Carroll county, against Reuben Conaway, the executor, for the purpose of enforcing collection of the same. He also further alleges, that the petitioners have not filed their petition for the revocation of the letters within the time required by law, and that the same should not therefore be revoked.

Josiah S. Cover then intervened by petition, asking to be made a party to the proceedings, and insisting that he is entitled to administer in preference to his sister, Elizabeth, and that he renounced his right to do so with the express understanding and agreement, that letters should be granted to John H. Conaway, and if they should be revoked, he prays leave

to withdraw his renunciation, and that the letters may be granted to him.

On these petitions and answer testimony was taken. Two witnesses only were examined on the part of the appellee. One of them, Pickett, proves, that he communicated to Mrs. Stocksdale and family the death of Reuben Conaway, the day after it occurred, in the latter part of November 1858. The other, Dr. Crawford, who was examined on the 15th of March 1859, says, he was in the habit, during the past winter, of attending Mrs. Stocksdale, as a physician, and visited her sometimes two or three times a week, and sometimes about once in two weeks; that during these visits he had frequent conversations with Nathan Stocksdale on the subject of his and his wife's claim against Henry Cover, deceased, and the settlement of his estate generally; witness recollects that on one occasion he had a conversation with Mr. Stocksdale about young Conaway, that is Mr. John H. Conaway, and old Mr. Conaway, and Mr. Stocksdale remarked, that old Mr. Conaway had treated Mr. Cover, his father-in-law, badly, and the young man had treated him worse, and that he (Mr. Stocksdale) thought that his chances would be better with young Mr. Conaway than old Mr. Conaway; the bad treatment alluded to was, that old Mr. Conaway did not visit Mr. Cover for some months before his death, and that the young man did not visit him at all; witness does not recollect the time of this conversation last spoken of, whether it was before last Christmas or after it, it may have been a couple of weeks ago, or it might have been a couple of months ago; during some of these conversations, Mr. Stocksdale told witness, that he had sued Reuben Conaway, the executor of Henry Cover, and that he meant to summon deponent as a witness in the case.

The court then passed an order dismissing the petition of Stocksdale and wife, and also that of Josiah H. Cover, and directing the costs to be paid out of the estate. From this order Stocksdale and wife appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Oliver Miller,* for the appellants, argued:

1st. That if it should be considered that the appellants *had notice* of the grant of letters to the appellee, ·on the day they were granted, still, the application to revoke was *within time.* The court will perceive the similarity of this case to that of *Edwards vs. Bruce,* 8 *Md. Rep.,* 387, where it was held, that the application to revoke could only be made within the *same time,* after the party applying *has knowledge* that letters have been granted, as that provided by law, within which an *original application* for letters is to be made. The appellants rely upon the principle decided in that case, and upon the Act of 1798, ch. 101, sub-ch. 3, sec. 4; sub-ch. 5, secs. 6, 7, 10, 15, 20, 23; and sub-ch. 14. sec. 2. From these provisions of the testamentary system, it clearly appears, that, upon the death of this executor, the appellants were entitled to letters *de bonis non* in preference to the appellee, and, that being so entitled, the *shortest time* within which they could ask for them, is *eighty days,* and having filed their petition within that time, it is not too late.

2nd. ·That by the decision in *Edwards vs. Bruce,* the appellants are allowed the time, before stated, after they *had notice* of the granting of the letters sought to be revoked. It is for the party, to whom the letters have been granted contrary to the order prescribed by the testamentary law, to show, by affirmative proof on his part, that the provisions of that law have been complied with, by a summons to those entitled; or, that they had notice thereof for the prescribed time, before their application. And there is not a tittle of evidence in this case, from which a court or jury could infer, that the appellants had such notice, at any definite time, if, indeed, for a single day, before their petition was filed.

3rd. That Josiah S. Cover had no power to *delegate* his right to administer, to one in a more remote degree in order of administration, for the purpose of excluding one in a nearer degree; and the *desire* expressed in his renunciation, that letters should be granted to Conaway, can have no effect upon the rights of the appellants. The law designates the particular parties to whom administration is to be committed, *in their*

*order*, and when the party, first in order, steps aside, by a renunciation or refusal to act, the one next in order comes in. This is the policy of the law, and cannot be interfered with by any act or agreement of parties. 8 *Gill*, 285, *Ex-parte Young.* 9 *Gill*, 463, *Owings vs. Bates.* 8 *G. & J.*, 79, *Hoffman vs. Gold.*

4th. That if the order is reversed, and the case sent back, it will be necessary for this court to pass upon the right of Josiah S. Cover to withdraw his renunciation, and take letters to himself. The appellants insist he has no such right. In the first place he has not seen fit to protect his interests by an appeal from this order, which dismissed his petition, and he, therefore, stands in the attitude of a party *acquiescing* in a decree which repudiates the right set up in his petition. But again, the appellants insist he has no right to retract in any event. His renunciation is in the most unqualified terms, and as soon as it was signed by him, and filed in court, the rights of the parties next in order of priority under the testamentary law, sprang into existence, and cannot be interfered with by a retraction of the renunciation. He is estopped from saying, that this paper was any thing save what it purports to be on its face. The delay and inconvenience which would attend the administration of estates, if this retraction should be sustained, are obvious, and must prevent the court from sanctioning it. He has made his *election*, and it is conclusive upon him. Act of 1798, ch. 101, sub-ch. 14, sec. 1. 6 *G. & J.*, 188, *Evans vs. Iglehart.* 4 *Leigh*, 152, *Thornton vs. Winston.*

*Joseph M. Palmer*, for the appellee, argued:

1st. It is well settled in this State, that the orphans courts have the power, when letters of administration have been improvidently issued, to revoke them upon proper application to the court. But every case, where such an application is made, must depend upon its peculiar circumstances, and the application in this case was not made in time to authorise the court to revoke the letters. The letters *de bonis non* were granted on the 20th of December 1858, and the application to revoke

was not made until the 28th of February 1859. This is too late, as shown by the authorities, all of which are cited and reviewed in *Edwards vs. Bruce.* It is said, the appellants should have had notice of the grant of these letters, and that they had not such notice. In the first place, it is insisted, on the part of the appellee, that no notice was required or necessary by the law authorizing letters of administration *de bonis non;* the appellants were presumed to know their rights and should have made actual application for letters.

The 2nd sec. of the 14th sub-ch. of the Act of 1798, ch. 101, declares, that "if an executor shall die before administration is completed, letters *de bonis non* may be granted, *at the discretion of the court,* with a copy of the will annexed, (if the case require,) giving preference however to the person entitled, *if he or she shall actually apply for the same."* The appellants did not actually apply for letters, as they should have done if they wished to obtain them. In the second place, even if it should be deemed necessary that the appellants should have notice of the granting of letters to the appellee thirty days before they filed their petition, it is insisted, that they had such notice. Notice in this case, as in all others, must be inferred from facts and circumstances. The facts and circumstances in this case, it is respectfully submitted, are irresistibly conclusive as to the question of notice.

2nd. The petition of the appellants states, that Elizabeth Stocksdale is the oldest daughter of the testator, Henry Cover, and that she is entitled to letters *de bonis non,* but there is not a particle of evidence in the record to prove her right. The record shows that the testator left a widow who is entitled in the discretion of the orphans court. The widow did not make application. The allegation in the petition is neither admitted nor denied, and hence it must be proved as an affirmative allegation. 7 *Gill,* 189, *Briesch vs. McCauley.* It is a universal principle, that the allegations in the bill must be proved if not admitted. The appellants, therefore, stand in the attitude of parties who have failed to make out their case;—they have not proved that they, or either of them, have *the right* to these letters.

3rd. The court below dismissed the petition of the appellants, which, as a matter of course, dismissed that of Josiah S. Cover. The prayer of his petition was made to depend upon the decision of the case made by the petition of the appellants. He claimed the right to *rescind* his renunciation, and he insists on that right in case the letters to the appellee are revoked. His renunciation is not so absolute as supposed by the counsel for the appellants, but was strictly made, in the presence of the orphans court, a *conditional* renunciation merely, and as such he has the right now to insist upon having the letters.

Le Grand, C. J., delivered the opinion of this court.

This is an appeal from an order of the orphans court, for Carroll county, refusing to revoke letters of administration, which had been granted to the appellee, upon the estate of Henry Cover, and dismissing the petition of the appellants, asking the revocation and the grant of letters to them.

The record discloses these facts:—Henry Cover died in 1857, leaving a will, in and by which his son-in-law was appointed his executor. The heirs, devisees and legatees of the testator, were, a son, Josiah S. Cover, and two daughters, Susannah Conaway, wife of Reuben, and Elizabeth Stocksdale, wife of Nathan, and a grand-daughter, the child of a deceased daughter.

The person designated as executor qualified as such, and entered upon the duties of the office, but died in December 1858, without having settled up the estate. Josiah S. Cover, who was entitled (being the eldest male child of the deceased) to letters *de bonis non*, filed in the orphans court a renunciation of his right to letters of administration, "desiring, at the same time, that letters might be granted to John H. Conaway," a son of the deceased executor, which was accordingly done. On the 28th of February 1859, *sixty-eight* days after the granting of the letters to the appellee, the appellants filed their petition, asking for the revocation of these letters, and the granting of others to the appellant, Elizabeth. At a subsequent period Josiah S. Cover filed his petition, asking to be made a party to the proceeding, and protesting against the revoca-

14    v. 14.

tion, but insisting that if the letters be revoked, that his renun-
ciation be considered as withdrawn, and his right to letters as
asserted.    This petition, like that of the appellants, was dis-
missed.    The appellant, Elizabeth, is the eldest child of
Henry Cover, and, as such, if there be no unmarried sister, is
entitled to letters in preference to all others, save Josiah S.
Cover, unless that right has been lost by her acts or *laches.*
The first inquiry, then, is:—What is the effect of the renunci-
ation of Josiah S. Cover?

The law gave to him the *right* to administration, but did
not make it incumbent upon him to exercise it.    There is no
reason why his election should not be as binding on him, in a
case like the present, as it would be in any other; and there
can be no doubt that a party may conclude himself by his ad-
missions and acts; "an election being once made, so as to
charge the defendant, cannot, at a subsequent period, be pro-
spectively retracted or abandoned." *Evans et al., vs. Iglehart,*
6 *Gill and Johnson,* 171.    In the case of *Thornton vs. Win-
ston,* 4 *Leigh,* 152, it was held, that where an executrix de-
clined to qualify as such, and agreed that administration with
the will annexed, should be granted to her daughter, reserving
her right to qualify after her daughter's death, such renuncia-
tion was absolute and perpetual, and could not be revoked.
That case also decided, what was decided in Maryland in the
cases of *Hoffman vs. Gold,* 8 *Gill & Johns.,* 79; *Young,*
*admx. of Young, Ex-parte,* 8 *Gill,* 285; that the right to ad-
minister cannot be delegated.

Whilst the 7th section of the 3rd sub-chapter of the Act of
1798, chapter 101, authorizes the withdrawal of the renuncia-
tion of an executor named in a will, it yet confines it to a time
*"before letters testamentary or of administration shall actually
be committed to another or others."*

The first section of sub-chapter 14 provides, that if *any* per-
son entitled to administration shall deliver, or transmit to the
orphans court, a declaration, in writing, that he is *willing* to
decline the trust, the court shall proceed as if such person were
not entitled;" and the 6th section of the 5th sub-chapter pro-
vides, that "in case any executor, executrix, administrator or
administratrix shall die before the estate shall be fully admin-

istered, letters of administration *de bonis non* shall be granted to the person entitled agreeably to the rules" laid down in the Act.

Now the person entitled to *letters de bonis non* was Josiah S. Cover, and he not only expressed a *willingness* to decline the trust, but in the most unequivocal manner renounced, and this imposed upon the orphans court, under the 6th section of the 5th sub-chapter, the duty to appoint the party entitled. This party is the appellant, Elizabeth, if there be no unmarried sister. Nothing could deprive her of her right, except her relinquishment of it, or her failure to *apply* for the appointment in due time. She did not, in fact, refuse to act, and, therefore, the only question is, whether she made application in proper time?

In the case of *Edwards, Adm'r of Bruce, vs. Bruce,* 8 *Md. Rep.,* 387, it was decided, that an application to the orphans court to revoke letters of administration can only be made within the same time after the party applying has *knowledge* that letters had been granted, as that provided by law, within which an *original* application for letters is to be made, and that the courts, upon the principle of analogy, will, by construction, apply express statutory restrictions, in regard to time, to cases of similar character, where no such express legislative provisions exist. In that case, the time which elapsed between the granting and the application for the revocation of the letters, was two hundred and thirty days, and the court held it was too great, that it could not, on principles of analogy, be extended beyond eighty days. In the present case, the application was made within sixty-eight days. The order must be reversed and the cause remanded, so that the parties in interest may be summoned and the question decided according to the direction of the testamentary system.

Although we have expressed our opinion on the effect of the renunciation of Josiah S. Cover, we have only done so to facilitate the action of the orphans court, when this case shall again come before it for adjudication. There was no appeal by him from the order dismissing his petition.

*Order reversed and cause remanded;*

*costs to be paid out of the estate.*

(Decided July 1st, 1859.)