## CIRCUIT COURT OF BALTIMORE CITY

Filed August 25, 1888.

BALTIMORE & OHIO R. R. COMPANY

VS.

CANTON COMPANY.

*John K. Cowen* and *E. J. D. Cross* for plaintiff.

*Charles Marshall* and *John L. Thomas* for defendant.

(See Appeal 70 Md. 405-R.)

PHELPS, J.—

The bill was filed 28th October, 1886, praying the cancellation of an award for $140,000 made 7th June, 1886, and an injunction restraining suit thereon. The grounds upon which the award is impeached are: 1st, that one of the arbitrators was at the time a large stockholder in the Canton Company without the knowledge of the plaintiff; and 2nd, that the amount awarded is excessive, and so far beyond the real damage by the taking of the land by the railroad company, as to indicate partiality or bad faith. The defenses are that the plaintiff, through its managing agent, had knowledge of the interest of the arbitrator, that the plaintiff further knew or ought to have known that the same arbitrator was also a large stockholder in its own company, that the award, instead of being excessive, is too small, and that the bill was not filed in time.

1. *As to the amount.*—At the request of counsel, I traversed the entire length of the strip of land, escorted by the engineers of the two companies, who vigorously contested with each other almost every step of the way. If all I had to do was to adjudge upon a walking debate between these two professional gentlemen I should decide that the Canton engineer was overmatched in argument. The impression made while upon the ground, recalling the testimony of the witnesses to value upon either side, and in view of the comments of the experts, was that while the award was a very liberal one it was not so grossly inflated as to justify suspicion or bad faith on the part of the arbitrators. The problem appeared somewhat difficult and complex, as to the solution of which men of equal intelligence and information might honestly differ, and not professing to be an expert, either in land valuations or in questions of engineering, I simply give the opinion indicated for what it may be worth, deeming it due to counsel who naturally expect some result from the effort made at their instance. Upon this branch of the case I find no difficulty in holding that by their contract the parties expressly agreed to submit the entire question of valuation to the judgment of two men, and their judgment, no matter how mistaken or unreasonable it may appear to others, is conclusive between the parties, unless tainted by bad faith. "To substitute for it the opinion of other persons, whether judge, jury or witnesses. would be to annul the contract and make another in its place." (Lynn's case, 60 Md. 415; 8 Md. 221, 222).

2. *As to the interest of the arbitrator.*—It cannot be doubted that if the

corporation plaintiff, through its managing agent, was ignorant of the interest of one of the arbitrators, the award, however just it might appear to be, would upon reasonable application have to be set aside. Upon the other hand, it is quite as clear that acquiescence with knowledge is a waiver of the objection. Upon the proof, the case is found practically to turn upon the issue of fact, whether the then Vice-President of the railroad company, who was its managing agent in the transaction, had or had not knowledge before the award was made of the fact in question. Before coming to the testimony some reference must be made to the principles applicable to cases of this class.

The relief prayed is that of cancellation and injunction, both classified as extraordinary remedies. Nothing need be said of the latter, since injunction here is but ancillary to the principle relief. The cancellation of the award necessarily involves the annulment of the agreement of submission, and throws both parties back on their reserved rights outside of it, whether legal or equitable. What we are dealing with, therefore, is nothing less than the attempted cancellation of an executed contract. "Cancelling an executed contract is an exertion of the most extraordinary power of a Court of equity. The power ought not to be exercised except in a clear case." (Atlantic Co. vs. James, 94 U. S. 214).

The burden rests upon the plaintiff to make out its case, and its whole case. The distinction is apparent between a case like this and a proceeding against a fiduciary to impeach a voidable transaction of such nature as to devolve the *onus* upon the latter. In such cases, if acquiescence on the part of the plaintiff be relied on, the burden of proof is on the fiduciary to show knowledge. Here the *onus* is upon the plaintiff to show ignorance, and the bill is correctly framed on that theory, upon the principle that such proof is peculiarly in the plaintiffs' possession, and that the parties are dealing at arm's length.

The proof is to be clear, that is, consistent, satisfactory and convincing. It is unnecessary to comment upon the plaintiffs' testimony further than to say that it is impossible to peruse the whole of this testimony and put it together without feeling that upon the vital question at issue it comes in a peculiar and questionable shape. Instead of having that unmistakable ring of certainty required in such cases, it is, as a whole, clouded with doubt. As an aggressive weapon in a highly stringent case it is not a success.

3. *As to laches.*—What is a reasonable time for filing a bill to cancel an award? When a reference is made a rule of Court, four days is the limit of a motion to set aside the award. (Code of 1888, Art. 75, Sec. 46). An appeal from a judgment or decree must be taken within two months. (Code of 1888, Art. 5, Secs. 6, 30). Whichever one of these analogies be followed, the commencement of this proceeding was unreasonably delayed. Even giving the plaintiff the benefit of the doubt, upon its own admission it had knowledge of the essential fact as early as the 26th of June, and running the longest period of limitation indicated above from that date, the lapse of time is twice too much.

The only case that has been found bearing directly on the point is Smith vs. Whitmore, 1 H. & M. 576, where a bill to set aside an award for miscarriage of arbitrators was dismissed by the Vice-Chancellor of England (Wood), holding that although there had been a clear miscarriage, the Court of Chancery, in the absence of fraud or gross injustice, should exercise its jurisdiction only when the matter was fresh and brought before the Court within the time which the Courts of law had adopted for such motions, by analogy to the provisions of the Statute 9 and 10 W. III. This decision was affirmed on appeal by a divided Court in 2 DeG. J. & S. 297.

This precedent, if followed strictly, would point to so short a period as four days as the limitation by analogy. While the principle upon which this decision is based commands my assent, the drift of Maryland adjudication seems to call for a somewhat more liberal application of the principle in this State. Here, "it has been repeatedly held, that upon the principle of analogy, the Court will apply express statutory restrictions in regard to time to cases of similar character, where no such express legislative provision

exists." (Redman vs. Chance, 32 Md. 52; Edwards vs. Bruce, 8 Md. 395; Stocksdale vs. Conoway, 14 Md. 107)

Although in Maryland the occasion seems never to have before arisen for the application of the principle to a proceeding of this nature, the reason may possibly be found in the fact that until a very modern date the limitation of three years was allowed for taking an appeal from a judgment, and nine months from a decree, and no bill to vacate an award could have been longer delayed without encountering the defense of laches upon grounds quite irrespective of any statutory limitation by analogy. Be that as it may, it is sufficiently apparent that by reducing the period of limitation in all cases of appeal to two months, the law-making power has clearly signified to the Courts not only in general, that "*Interest reipublicae ut sit finis litium*," but, in particular, that that prescribed space of time is sufficient for every disappointed litigant, whether at law or in equity, to take the appropriate proceeding for the review of the judicial action of which he complains.

This present proceeding is, in effect, an appeal from the judicial action of the arbitrators. Their award is the judgment or decree of the tribunal constituted by the agreement of the parties as their substitute for the ordinary Courts. The analogy is too obvious for amplification, and all objection to its application is removed by adding a reasonable time for the preparation of the bill, which need not in any case exceed the twenty days allowed by Rule 11 for an answer. (Code of 1888, Art. 16, Sec. 117). The Court is here dealing with a subject over which it has complete jurisdiction and ample discretion, and the question simply is, whether, in the exercise of that discretion, the Court will look to analogous statutory prescription as one of the guides to direct it. Every consideration of justice, convenience and public policy that induced the law-making power to prescribe the limitation of two months in all cases of appeal, applies with equal force in all cases of application to a Court of equity for relief against an impeached award, and the line of decisions cited is abundant warrant for the application to this case of the

principle they embody. In fact, nothing is more familiar to Courts of equity than the application of statutes of limitation by analogy to equitable claims, in obedience to the maxim that *equity follows the law.* (35 Md. 151; 62 Md. 69; 2 Wall. 94; Note to 2d Md. Ch. 217, [Br. Ed.]; 7 G. & J. 137; 6 Md. 224.

Since the doctrine referred to is not one to be applied arbitrarily, irrespective of special circumstances explanatory of delay, attention is due to the suggestion made in the very able argument of counsel that the information possessed by the plaintiff required official verification before action could be properly taken upon it, and that time was required in order to obtain it. This suggestion, like that of Mr. Spence's absence during the balance of the summer, is not a satisfactory explanation of the delay. A frank letter of inquiry addressed to the defendant or its counsel was all that was necessary as a beginning, either for the purpose of verification or estoppel.

That no marked change of status intervened, and that the delay has not been shown to have irremediably prejudiced the other side, are suggestions entitled to be carefully weighed. While they are certainly found to relieve the case of aggravating circumstances that might otherwise have been in it, those circumstances are not always indispensable elements in the equitable conception of laches. They rather belong properly under the head of estoppel by conduct, a defense not available here. As soon as the defect in the award was fully understood, it was the duty of the plaintiff to move at once, if the intention was to repudiate it, as an earnest of good faith. To go on day after day, while enjoying possession of the property, the consideration of the award, paying no rent for it, and making no sign of dissatisfaction until threatened with proceedings to enforce the award was not such a display of conscience, good faith and reasonable diligence as equity exacts from those who seek to set in active motion its most powerful machinery. Viewing all these circumstances in the light of the unfortunate infirmity in the proof heretofore adverted to, I cannot escape the conclusion that the bill should be dismissed.