GEORGEANNA BOWERS, Administratrix, c. t. a.,

*vs.*

JOHN H. COOK and SAMUEL H. LUCAS.

*Executors: appointment; express words need not be used. Administration: waiver of right; notice; revocation; time for petition. Testamentary laws: purpose; speedy settlement.*

A will, without directly naming any executor, contained the following provisions: "I desire my trustees (hereinafter named), to pay my funeral expenses, all my just debts, and to erect a modest tomb over my remains. I appoint, as my trustees, to take charge of my estate upon my decease * * * J. H. C. and S. M. L."; such language, and the duties it imposes upon the trustees, indicates that they are to be the executors as well as trustees.                                                    p. 570

The designation of one as an executor need not be by the use of the word "executor"; any words which confer on a person the substantial rights, powers and duties of an executor, amount to such an appointment under the will, and are sufficient to clothe such person with the functions of the office.          p. 569

The right to administer is a valuable right of which, in general, a party entitled can not be deprived, but the right may be forfeited or lost.                                              p. 573

Where one of the parties entitled to letters of administration is present at the probate of the will, and the other party is a non-resident, and neither have qualified or given bond, according to the provisions of sections 43-46 of Article 93 of the Code, it is not necessary for a summons or notice to issue to them, before letters be given to the next person entitled.

pp. 570-571

For the one first entitled to letters of administration to have revoked the letters, which were granted another, he must move to have them revoked within the same time, after his knowledge that they were granted, as that provided by law within which an original application for the letters should have been made.

pp. 573-574

The whole purpose of the testamentary system of the State is to guard against all useless delay, and to secure as prompt and speedy settlements of estates as practicable. p. 575

Where one who is entitled to administer has knowledge of the appointment of another in his place, the time within which he must petition for the revocation of the letters begins to run from the time of his knowledge of such fact, and not from the time when he informs himself on questions of construction as to the appointment. p. 575

*Decided January 13th, 1915.*

An appeal from the Orphans' Court for Baltimore County.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER and CONSTABLE, JJ.

*Linwood L. Clark,* for the appellant.

*T. Scott Offutt,* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Baltimore County, revoking letters of administration *c. t. a.* heretofore granted to the appellant and issuing new letters to the appellees.

The proceedings were instituted by the appellees filing a petition, alleging that William T. Bowers died, leaving a last will and testament, in which the appellees, who were sons-in-law of the decedent, were named as executors, but that they

were not aware of their right to administer until after letters of administration *c. t. a.* had been issued to the widow, the appellant herein; and further alleged that the administrator had failed to account for the property of the estate, or to discharge other duties of her office. Testimony was taken upon the issues formed by the petition and the answer thereto, and this appeal was taken from the order thereupon passed.

It appears that William T. Bowers died on September 14th, 1913, and that his will was probated on September 18th, 1913, and that on said last date, his widow applied for, and had granted to her, letters of administration *c. t. a.* The will did not expressly nominate anyone as executor by the use of the word executor, but it is the claim of the appellees that by the terms of the will, they were designated to act as executors, and, therefore, were entitled, above all others, to letters as such. And this contention is the first question arising on this appeal.

The will provided that the net income of the estate should be paid to the widow for life, and at her death the estate should be divided among his children or their heirs. The only language of the will, with which we are concerned, is found in the two following clauses:

"(1) I desire my trustees (hereinafter named) to pay my funeral expenses, all my just debts, and to erect a modest tomb over my remains."

"(2) I appoint as my trustees, to take charge of my estate upon my decease, my two sons-in-law, John H. Cook and Samuel M. Lucas."

It is well established that, for the designation of one as an executor, it is not necessary to use the word executor, but any words which substantially confer upon a person the rights, powers and duties of an executor, amount to an appointment under the will, and any person thus clothed with the essential functions of the office is said to be an executor under the will according to the tenor. 1 *Williams Law of Executors and Administrators,* 239; *Schouler on Wills and*

*Administration,* 328, and innumerable state decisions. The language of these two clauses clearly shows, in imposing upon the trustees duties which they could not perform as trustees, but only as executors, that they were to be the executors of the estate as well as trustees. We cannot follow the argument of the appellant that, because a trust estate was created, the appointment of the trustees was thereby accounted for, and although they were given powers ordinarily exercised by executors, nevertheless the Court had a right to appoint the widow administrator *c. t. a.,* no executor having been expressly nominated in the will. The powers and duties of executors and trustees are distinct and separate. Different parties entirely may be named for each duty. And, if competent, each has a priority to the right. If these appellees were designated executors, by the terms of the will, as we have said they were, the fact that they were also expressly named as trustees would give no Court, for that reason, any right to deprive them of what this Court, in many decisions, has denominated as a valuable right.

We are of the opinion, therefore, that the granting of letters to the appellant on the day of the probate of the will was an inadvertence, and, therefore, the letters were improvidently granted.

Whether there is any reason why the letters should not have been revoked, and letters issued to the appellees on this application, is the next question to be considered.

By section 43 of Article 93 of the Code (Bagby's) it is provided, that where there is only one executor named in a will and he shall have been present at the authentication or probate of the will, and shall not within thirty days thereafter file a bond, letters of administration *c. t. a.* may be granted to such person as would be entitled in case of intestacy, unless the executor named shall have procured an attested copy of the will for the purpose of taking out letters in some county other than where the will was probated, and has not obtained letters in such other county within seventy

days, then, in that event, the Court may grant letters *c. t. a.*
as aforesaid.

Section 44 of the same article provides for a summons to
issue against an executor who is within the State, but who
was not present at the probate, notifying him to appear and
file bond, and making same returnable not less than twenty
days nor more than sixty, with twenty days thereafter to file
the bond, with a provision for two *non ests* and a failure to
appear, or appearing not filing a bond within twenty days
after the return day; with a proviso that in case of sickness,
accident or reasonable excuse the Court may allow a further
time after such return or appearance for filing a bond, but
not exceeding forty days.

By section 45 of the same article, it is provided, in case
the executor has been without the State at the time of the
probate and shall not return within six months thereafter
and file a bond, letters of administration *c. t. u.* may be
granted as provided in section 43.

Section 46 provides that when there shall be more than
one executor the same proceedings shall be taken as to each
as if he were the only one named.

The facts as disclosed by the testimony in the Record
show, that on the day of the burial of Mr. Bowers all the
family, including the two appellees and an attorney, who
had been counsel for Mr. Bowers in his lifetime and who
was retained by the widow, gathered at the home to hear
the will read. The will was produced by a brother of the
deceased, and was read to the others by the attorney. After
the reading, the attorney gave it as his opinion, that no
executor had been designated, and, therefore, the widow was
entitled to letters, and announced then that the widow was
going to apply for letters. The material part of what took
place can well be put here as testified to by the appellees. Mr.
Lucas testified as follows: "Q. In what capacity was Mr.
Clark present on that occasion? A. As attorney for Mrs.
Bowers. Q. And to whom did he give that advice? A. To

every one present, all that were there." And on cross-exam-
ination he testified: "Q. You have also said that I advised
all the folks who were there. Now, do you remember this,
that after I was asked to read this will and did so—and the
matter of the failure to specifically to appoint an executor
was discussed—do you recall that I, after giving my opinion
in the matter, which is still my opinion, distinctly told the
folks that I wanted to be regarded, distinctly, as attorney for
Mrs. Bowers, and I was speaking for Mrs. Bowers, and that
if any one there had any idea that they had rights of any
kind in the matter, that they should get individual counsel.
Do you recall that? A. I think you said that." Mr. John
H. Cook testified: "Q. State what took place? A. Ross M.
Bowers handed the will to Linwood Clark, attorney for Mrs.
Bowers, to read it. A discussion arose as to whether the
trustees were to have full charge of the estate. We were
under the impression we were. We made no effort to protect
our interest to any great extent. We figured that Mrs. Bowers
had taken care of her interests and we did not think it neces-
sary. Q. What advise did he give you as to taking out letters
on the estate? A. As near as I can think now, he told us if
things were not satisfactory, we could get individual counsel,
and we did." Mr. Samuel M. Lucas was a resident of Balti-
more County, being the deputy clerk of the Circuit Court
for that county, but Mr. John H. Cook was a permanent
resident of Chicago, being in Baltimore County merely for
the funeral.

Two days after the reading of the will, on September 18th,
letters were taken out by Mrs. Bowers; Mr. Lucas being
present when this was done, at the invitation of Mrs. Bowers
and her attorney.

The principal asset of the estate appears to have been a
sum of ten thousand dollars due from one of the sons, for
which debt, an understanding had been had between the
father and son that notes aggregating that amount should be
given by the firm, of which the son was a member, to the

father. Mr. Bowers died before this was accomplished. The son had the notes drawn by his firm to the order of the trustees, with the understanding that if it should develop that they were in the wrong hands, they would be returned to the makers and new ones drawn to the proper party. Both the administratrix and the trustees claimed to have the right to them, and, before the making of them to the trustees, the administratrix repeatedly demanded them from the firm, and, although promised them, they were made to the trustees; from whom she has also demanded them by way of assign-ment, but without success. The administratrix had prepared the necessary papers for the purpose of recovering said notes, and notified the attorney for the petitioners of that purpose, whereupon the following day, May 26th, 1914, the petition of the appellees was filed.

Although the right to administer is a valuable right, it nevertheless is not such a right that cannot be forfeited or lost, as witness the provisions referred to above, calling for action by those entitled. In the present case, it was not neces-sary for a summons or notice to issue to either of the appel-lees for the reason that one, Lucas, had been present at the probate, and the other, Cook, was a non-resident and out of the State. Under the provisions of section 43, the Court might have excluded Lucas after the expiration of thirty days from the date of the probate, if he had not qualified: and excluded Cook after six months and have issued letters to an administrator.

Under the authority of *Edwards* v. *Bruce,* 8 Md. 387; *Clagett* v. *Hawkins,* 11 Md. 387; *Stocksdale* v. *Conaway,* 14 Md. 99; *Redman* v. *Chance,* 32 Md. 42; *Pollard* v. *Mohler,* 55 Md. 285; *McColgan* v. *Kenny,* 68 Md. 261, it has repeat-edly been held as the established law of this State that to enable one, first entitled to letters of administration, to have letters granted to another, revoked, he must move to have them revoked within the same time after he has knowledge they have been granted as that provided by law within which

an original application for letters is to be made. If that is still to be the law in this State, then the extreme limit in this case would be six months after such knowledge acquired on the part of Mr. Cook. During the examination of Mr. Cook, it is a fact that he testified that he did not know that Mrs. Bowers was the administrator of the estate until the very day of the hearing, June 16th, 1914, but we think we are justified in concluding from the Record that his meaning was not that he did not know as an actuality, letters had been granted to her, but that he did not think she had a right to them. Let us review briefly our reasons for this conclusion. He admitted that in the discussion on the day of the reading of the will, the question was raised as to who should take charge of the estate, and, although he and his trustee thought they should, they did nothing to protect their interests, believing Mrs. Bowers could take care of it. He and his co-trustee had secured separate counsel a day or two after the reading. Mr. Clark, whom he always recognized as the attorney of Mrs. Bowers, visited him shortly afterwards in Chicago in consultation over her rights as administratrix to the notes, above mentioned, and this is his testimony *verbatim*: "Q. Didn't you just say the $10,000 in notes was discussed? A. I said the notes were discussed, but no particular amount. You tried to make me believe that Mrs. Bowers had charge of this estate. Q. Then you were informed Mrs. Bowers had charge of this estate? A. No, sir. You started to make me believe that. I don't believe it yet."

So, it is apparent his statement, that he did not know until that day Mrs. Bowers was the administratrix, was a mere quibble of words. And more especially, when it is noted that he further testified that he had come on from Chicago to have determined who was entitled to administer. This is a jurisdictional fact, and must be established as a condition precedent to the courts entertaining the petition, and it is inconceivable, under all the facts disclosed by the Record, that this appellee did not have knowledge of the appointment.

The contention of the appellees is that time did not commence to run against them until they actually had knowledge of their rights, and that they promptly filed the petition upon learning that right. In other words, they urge that although they knew the terms of the will, yet inasmuch as they did not understand what rights they had by a true construction of those terms, they are not barred if they filed their application reasonably after that information was acquired. They urge they could not have waived something they did not know they had. This argument has no more force than if a person, first entitled to letters on the estate of an intestate having filed a petition too long after he had knowledge that letters had been granted to another, would argue that he could not be barred because he had just learned, that by a correct construction of the statutes governing the priority of administration, he was entitled. This Court has said, the whole purpose of the testamentary system of this State, is to guard against all needless delay and to secure as prompt and speedy settlements of estates as practicable. If a person is to be given time to inform himself on questions of construction, when the facts are known to him, what limits of time are to be placed upon him? Is he to be limited to a short time or can he wait indefinitely until he is thoroughly convinced and satisfied?

It does not present a case in which new facts are disclosed to them, for they had just the same knowledge of facts on the day the will was read as they had on the day their petition was filed. It is only that the true meaning of those facts were unknown to them. It does not present a case wherein executors were expressly named in a will of which they had no knowledge of either the will or the contents and, although residing in the State, no summons or notice had issued to them and letters had been granted to another, for that would constitute a lack of knowledge of facts not of interpretation of facts. But this is a case of where they did know the facts, but were ignorant of just exactly what rights those

facts gave them. However, we are of the opinion, even if such were the law, that the facts themselves would bar these appellees from any right to invoke it in their behalf. It will be recalled, from the testimony set out, that a discussion arose, after the reading of the will, as to who had the right to administer, and one of the appellees expressed his opinion as contrary to that of the attorney and was advised then to consult other counsel, which they did immediately, and yet did nothing towards asserting their own right. There certainly would be no justice in permitting a person, in a case of this nature, to come forward and attempt to enforce what he says is a conviction now, but was only a suspicion eight months before. The law will not let one, when he comes in conflict with a rule where time is an essential, avoid the effect of that rule, while admitting that the delay has been occasioned by his blindly shutting his eyes and not attempting to establish what he has expressed as his belief and has even been advised to ascertain for a certainty.

Without prolonging this opinion any further, we are of the opinion that the appellant is not to be censured for not having filed the inventory and appraisement. The bulk of the estate, as we have said, consisted of the ten thousand dollars' worth of notes, and we think she was justified in not proceeding until she had possession of them and thus, ascertained with certainty the amount of each, etc. That she could not get possession was due entirely to the efforts of the trustees, and it is not for them to criticise her for that omission. The claim of conflict between the administratrix and the estate as to one alleged asset can be readily adjusted by a proper proceeding and does not call for her removal.

Being of the opinion that the Orphans' Court erred in revoking the letters of the appellant, we will therefore reverse the order.

*Order reversed and petition dismissed, with costs to the appellant.*